J-A13045-23

2023 PA Super 155

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                              :          PENNSYLVANIA
                              :
          v.                     :
                              :
                              :
DANA GANJEH                  :
                              :
          Appellant         :    No. 586 MDA 2022

Appeal from the Judgment of Sentence Entered March 30, 2022
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s): CP-40-CR-0003535-2018

BEFORE:    BOWES, J., LAZARUS, J., and STEVENS, P.J.E.*

OPINION BY STEVENS, P.J.E.:          **FILED: AUGUST 15, 2023**

Dana Ganjeh appeals from the March 30, 2022 judgment of sentence of life imprisonment without the possibility of parole after a jury found him guilty of first-degree murder in connection with the bludgeoning death of his female companion.[1] After careful review, we affirm the judgment of sentence.

The suppression court summarized the relevant findings of fact and procedural history of this case as follows:

> On or about November 5, 2018, the Luzerne County District Attorney filed a criminal information charging [Appellant] with criminal homicide.
>
> The aforementioned criminal information alleged that the [Appellant] intentionally, knowingly, recklessly or negligently caused the death of Linda Frick on or about August 4, 2018.

---

* Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 2502(a).

[Appellant's] counsel filed pre-trial motions on August 13, 2019, which alleged that statements made by the [Appellant] to law enforcement were obtained in a manner contrary to the [Appellant's] rights and in violation of the 14th Amendment to the United States Constitution and Article 1, section 9 of the Pennsylvania Constitution.

A hearing on [Appellant's] motions was conducted before the [trial c]ourt and the parties submitted briefs.

On August 4, 2018, Officer Jude Allen was employed a patrolman with the Kingston Borough Police Department.

On that same date, Officer Allen and Officer Robert Miller, also employed by Kingston Borough Police Department were dispatched to investigate a report of a deceased person and a suicidal male at 71 Price Street, Kingston, Pennsylvania.

As the officers approached the residence, a male, later identified as [Appellant] opened the door and without prompting or questioning, handed officer Miller a key and stated, "She's around back in a vehicle."

[Appellant] was placed in handcuffs to protect the safety of the responding officers and the public.

Officer Allen asked [Appellant] "What happened?"

[Appellant] responded that the victim, Linda Frick, "wasn't feeling well, that he was going to take her to the hospital and she just died…[.]"

[Appellant] continued, stating that he was "screwed."

At the time [Appellant] was handcuffed, he was not yet a suspect in this homicide and in fact officers did not even know that a crime had been committed[.]

- 2 -

[Appellant] was subsequently interviewed by Detective James Noone, and Detective Lieutenant John Anthony Of the Kingston Police Department.

Detective Noone and Detective Lieutenant Anthony, hereinafter the investigators, interviewed [Appellant] in a meeting room located inside the Kingston Police Department which was a large room with tables and chairs.

[Appellant] was allowed to use the bathroom, and was provided food and drink and allowed to smoke cigarettes.

The investigators did not threaten, intimidate or coerce [Appellant] during the interview.

Detective Noone asked [Appellant] if he could record the interview and [Appellant] declined. Therefore, the investigators did not audio or video record the interaction.

Detective Noone read the Constitutional warnings pursuant to *Miranda v. Arizona*[2] to [Appellant] from a form document, hereinafter *Miranda* rights waiver.

[Appellant] then initialed and signed the *Miranda* rights waiver.

When [Appellant] signed the *Miranda* rights waiver he did not appear to be under the influence of drugs or alcohol.

When [Appellant] signed the *Miranda* rights waiver he did not appear to be in any distress and clearly understood said constitutional warnings.

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

After executing the ***Miranda*** rights waiver, [Appellant] agreed to and was interviewed by the investigators.

[Appellant] answered some of the investigators['] questions and declined to answer others.

During the interview [Appellant] indicated that he was with the deceased earlier and that she was feeling ill.

[Appellant] indicated that he and the decedent were driving around in the vehicle on the night before and at some point he discovered that she was deceased in the vehicle.

The investigators asked [Appellant] about injuries to his hands.

When the investigators inquired about the injuries to the decedent, [Appellant] invoked his right to counsel.

Subsequent to [Appellant's] request for counsel, the investigators ceased their questioning and terminated the interview.

Suppression court order and opinion, 4/8/20 at 2-5 (extraneous capitalization, numeration, and citations omitted).[3]

On October 15, 2019, the Commonwealth filed a notice of its intention to introduce prior bad acts evidence. This evidence concerned (1) Appellant's pending criminal case in Wayne County, Pennsylvania involving his alleged simple assault and strangulation of the victim; and (2) the history of contact between Appellant and the Kingston Police Department related to his prior

---

[3] The suppression court's April 8, 2020 order and opinion does not contain pagination. For the ease of our discussion, we have assigned each page a corresponding number.

domestic abuse of the victim in September 2017, December 2017, and February 2018. Following a hearing on September 13, 2021, the trial court determined that this evidence was admissible under Pennsylvania Rule of Evidence 404(b). Notes of testimony, 9/13/21 at 34.

On August 13, 2019, Appellant filed two separate pretrial motions to suppress the statements that he made to police at the Price Street residence and during his subsequent interview at the Kingston Police Headquarters, on the basis that his statements were made in violation of his **Miranda** rights. The suppression court held a hearing on Appellant's suppression motions on October 16, 2019 and ultimately denied said motions on April 8, 2020.

Following several continuances, Appellant proceeded to a jury trial on September 14, 2021. On September 17, 2021, the jury found Appellant guilty of first-degree murder. On March 21, 2022, Appellant filed a post-verdict motion for a new trial that was denied by the trial court on March 30, 2022. As noted, the trial court sentenced Appellant that same day to life imprisonment without the possibility of parole. This timely appeal followed on April 12, 2022.[4]

Appellant raises the following issues for our review:

> A.   Should [Appellant's] custodial statements have been suppressed?

---

[4] Appellant and the trial court have complied with Pa.R.A.P. 1925.

B.    Did the [trial] court abuse its discretion by admitting testimony about Appellant's prior bad acts?

C.    Did the [trial] court abuse its discretion by denying [Appellant's] motions for substitute counsel?

Appellant's brief at 5.

Appellant first argues that the suppression court erred in denying his pretrial motion to suppress the statements that he made to police at the Price Street residence and during his subsequent interview at the Kingston Police Headquarters. *Id.* at 14. The crux of Appellant's argument is that these statements were made in violation of his *Miranda* rights. *Id.* For the following reasons, we disagree.

> [Our] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous.

*Commonwealth v. Jones*, 121 A.3d 524, 526 (Pa.Super. 2015) (citation omitted; brackets in original), *appeal denied*, 135 A.3d 584 (Pa. 2016). Additionally, "[i]t is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their

testimony. The suppression court is free to believe all, some or none of the evidence presented at the suppression hearing." ***Commonwealth v. Byrd***, 185 A.3d 1015, 1019 (Pa.Super. 2018) (citation omitted).

It is well settled that when an individual is "both taken into custody and subjected to interrogation," that individual is entitled to ***Miranda*** warnings. ***Commonwealth v. Yandamuri***, 159 A.3d 503, 520 (Pa. 2017). Specifically, our Supreme Court has explained:

> The United States Supreme Court has held that, before law enforcement officers question an individual who has been in taken into custody or has been deprived of his freedom in any significant way, the officers must first warn the individual that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed. However, these special procedural safeguards are required only where a suspect is both taken into custody and subjected to interrogation. In determining whether a suspect is in custody, two discrete inquiries are essential: (1) an examination of the circumstances surrounding the interrogation; and (2) a determination of whether, given those circumstances, would a reasonable person have felt that he or she was at liberty to terminate the interrogation and leave. As noted, a person is in custody for Miranda purposes only when he is physically denied his freedom of action in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by the interrogation. ... Whether an encounter is deemed "custodial" must be determined by examining the totality of the circumstances.

***Id.*** at 520-521 (citations omitted).

Here, the trial court found "that all of the statements obtained by law enforcement were obtained in a manner consistent with [Appellant's] rights pursuant to the United States and Pennsylvania Constitutions and were admissible at the time of trial." Trial court opinion, 10/17/22 at 11. Following our careful of the evidentiary record, we agree with this assessment.

By way of background to this claim, Appellant's initial statements were made to responding officers upon their arrival at the Price Street residence on the morning of August 4, 2018. The suppression court summarized this encounter as follows:

> [T]he Commonwealth introduced testimony that Officer Jude Allen and Officer Robert Miller of the Kingston Borough Police Department were dispatched to 71 Price Street, Kingston on the morning of August 4, 2018, to investigate a 911 call reporting a deceased person and a separate 911 call reporting a suicidal male. When the officers approached the residence, a male, later identified as [Appellant], exited and, without prompting of questioning, handed Officer Miller a key and stated, "She's around back in a vehicle." Officer Miller went to investigate, and Officer Allen placed [Appellant] in handcuffs, not because he was a person of interest in any crime at that point, but because he was distraught, and was cuffed for safety purposes in light of the report of a suicidal male and Officer Miller's departure from the immediate scene. Unaware that a crime had even been committed at that point, and attempting to figure out what was going on, Officer Allen asked [Appellant] "What happened?" Officer Allen explained that in asking this question, he was trying to gather information and learn with whom he had to make contact and speak to, and that he was not attempting to get [Appellant] to admit to committing a crime. [Appellant] responded that "she wasn't feeling well," and that he

- 8 -

tried to take her to the hospital, and "she just died."
Then [Appellant] said "I'm screwed."

Trial court opinion, 10/17/22 at 8-9 (citations to notes of testimony omitted).

Upon review, we agree with the suppression court that Appellant was not subject to custodial interrogation at the time he made these voluntary and spontaneous statements to police, and thus, they were not obtained in violation of Appellant's constitutional rights. This Court has long recognized that "not every statement made by an individual during a police encounter amounts to an interrogation. Volunteered or spontaneous utterances by an individual are admissible even without **Miranda** warnings." **Interest of N.M.**, 222 A.3d 759, 771 (Pa.Super. 2019) (citation omitted), **appeal denied**, 229 A.3d 562 (Pa. 2020).

Additionally, the record further supports the trial court's determination that all the statements Appellant made during his subsequent interview at the Kingston Police Headquarters were made after he knowingly, intelligently, and voluntary waived his **Miranda** rights, and were thus admissible.

In addressing such a claim, we are guided by the following principles:

> When a defendant challenges the admission of a statement made during a custodial interrogation, the Commonwealth bears the burden to prove by a preponderance of the evidence that the defendant's **Miranda** waiver was knowing, intelligent, and voluntary. We engage in a two-part inquiry:
>
> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception. Second, the waiver must have

- 9 -

been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that *Miranda* rights have been waived.

An examination of the totality of the circumstances includes a consideration of (1) the duration and means of an interrogation; (2) the defendant's physical and psychological state; (3) the conditions attendant to the detention; (4) the attitude of the interrogator; and (5) any and all other factors that could drain a person's ability to withstand suggestion and coercion.

*Commonwealth v. Smith*, 210 A.3d 1050, 1058 (Pa.Super. 2019) (citations, internal quotation marks, and brackets omitted), *appeal denied*, 218 A.3d 1199 (Pa. 2019).

Here, the record reflects that Appellant was provided *Miranda* warnings prior to his interview at the Kingston Police Headquarters and executed a written *Miranda* waiver form wherein he acknowledged that he understood that his rights and was waiving them in agreeing to speak with Detectives Noone and Anthony. Notes of testimony, 10/16/19 at 28-33. Detective Noone testified that Appellant did not appear to be under the influence of drugs or alcohol at the time he waived his *Miranda* rights nor did he appear to be in any distress. *Id.* at 29. Detective Noone further testified that at no point during this interview was Appellant threatened, intimidated, or coerced. *Id.* at 28, 35. Appellant was also permitted to eat, drink, use the bathroom, and smoke during the course of this interview. *Id.* at 27, 42-43. The trial court

explicitly credited Detective Noone's testimony regarding the circumstances of Appellant's ***Miranda*** waiver. Trial court opinion, 10/17/22 at 11. We are bound by the court's credibility determinations, which are supported by the record. ***See Byrd***, 185 A.3d at 1019. Furthermore, under the totality of these circumstances, we agree with the trial court that Appellant's ***Miranda*** waiver was proper. ***See*** trial court opinion, 10/17/22 at 11; ***see also Smith***, 210 A.3d at 1058.

Accordingly, for all the foregoing reasons, we discern no error on the part of the suppression court in denying Appellant's suppression motions.

Appellant next argues that the trial court abused its discretion admitting prior bad act evidence, specifically evidence of his pending 2018 criminal case in Wayne County, Pennsylvania involving the victim; and the history of contact between Appellant and the Kingston Police Department related to his prior domestic abuse of the victim in September 2017, December 2017, and February 2018. Appellant's brief at 21.

"[T]he admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion." ***Commonwealth v. Fransen***, 42 A.3d 1100, 1106 (Pa.Super. 2012) (citation omitted), ***appeal denied***, 76 A.3d 538 (Pa. 2013). "An abuse of discretion is not merely an error in judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality,

as shown by the evidence of record." ***Commonwealth v. Belknap***, 105 A.3d 7, 10 (Pa.Super. 2014) (citation omitted), ***appeal denied***, 117 A.3d 294 (Pa. 2015).

It is well settled that "evidence of prior crimes is not admissible for the sole purpose of demonstrating a criminal defendant's propensity to commit crimes." ***Commonwealth v. Melendez-Rodriguez***, 856 A.2d 1278, 1283 (Pa.Super. 2004) (***en banc***); ***see also*** Pa.R.E. 404(b)(1). Nevertheless, "[e]vidence may be admissible in certain circumstances where it is relevant for some other legitimate purpose and not utilized solely to blacken the defendant's character." ***Id.*** Specifically, evidence of other crimes or bad acts may be admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake." ***Commonwealth v. Hairston***, 84 A.3d 657, 665 (Pa. 2014) (citations omitted), ***cert. denied***, 574 U.S. 863 (2014); ***see also*** Pa.R.E. 404(b)(2). Evidence of this kind may also be admissible under the ***res gestae*** exception, "where such evidence became part of history of the case and formed part of the natural development of facts." ***Commonwealth v. Ivy***, 146 A.3d 241, 251, (Pa.Super. 2016) (citation omitted). In criminal matters, "this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice." Pa.R.E. 402(b)(2).

Upon review, we conclude that the trial court did not abuse its discretion in holding that evidence of prior incidents of domestic abuse between

Appellant and victim and Appellant's pending criminal charges were relevant and admissible. Here, the evidence established that, since as early as 2017, Kingston Police Department officers responded to multiple incidents of domestic abuse by Appellant against the victim. The evidence suggests that the abuse of the victim continued to escalate until Appellant ultimately murdered her. The challenged evidence shows the chain or sequence of events which formed the history of the case, is part of the natural development of the case, and demonstrates Appellant's malice and ill-will toward the victim. Moreover, the evidence of Appellant's pending criminal charges for his alleged April 2018 simple assault and strangulation of the victim was specifically relevant to demonstrate that Appellant had a clear motive to murder her. **See Ivy**, 146 A.3d at 252 (stating that evidence of prior abuse between a defendant and an abused victim is generally admissible to establish motive, intent, malice, or ill-will).

Lastly, we agree with the Commonwealth that the probative value of the aforementioned evidence outweighed its prejudicial effect. "[T]he trial court is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged." **Hairston**, 84 A.3d at 666. Here, the challenged evidence was not so unduly prejudicial that it likely diverted the jury's intention away from its duty of weighing the evidence impartially.

Accordingly, for all the foregoing reasons, we discern no abuse of discretion on the part of the trial court in permitting this evidence to be introduced at trial.

In his final claim, Appellant contends that the trial court abused its discretion in denying his motions for substitute counsel. Appellant's brief at 26. We disagree.

"A motion for change of counsel by a defendant for whom counsel has been appointed shall not be granted except for substantial reasons." Pa.R.Crim.P. 122(C). "To satisfy this standard, a defendant must demonstrate that he has an irreconcilable difference with counsel that precludes counsel from representing him." *Commonwealth v. Spotz*, 756 A.2d 1139, 1150 (Pa. 2000) (citation omitted), *cert. denied*, 532 U.S. 932 (2001). We have held that a strained relationship with counsel, a difference of opinion in trial strategy, a lack of confidence in counsel's ability, or brevity of pretrial communications do not necessarily establish irreconcilable differences. *See Commonwealth v. Floyd*, 937 A.2d 494, 497-498, 500 (Pa.Super. 2007). Ultimately, "[t]he decision of whether to appoint new counsel lies within the sound discretion of the trial court." *Spotz*, 756 A.2d at 1150 (citation omitted).

Upon review, we find Appellant's contention that he was denied right counsel in this matter to be entirely devoid of merit. The record reflects that on November 4, 2019, Appellant filed a *pro se* motion while represented by

Assistant Public Defenders Mark Singer and Michael Kostelaba, requesting new counsel on account of an "irreconcilable personality conflict and difference of opinion…." Motion for Change of Counsel, 11/4/19 at 1. In response, Assistant Public Defender Demetrius Fannick entered his appearance on Appellant's behalf on October 19, 2020, replacing Attorneys Kostelaba and Singer. Following Appellant's subsequent dissatisfaction with Attorney Fannick's representation, the trial court granted Appellant's November 9, 2021 "Motion for Appointment of Conflict Counsel" and Attorney David Lampman entered his appearance on November 15, 2021. Accordingly, Appellant's request for substitute counsel was twice satisfied in this matter, and his claim to the contrary warrants no relief.

For all the foregoing reasons, we affirm the trial court's March 30, 2022 judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/15/2023