J-A08002-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MATTHEW GREGORY ROONEY | : | |
| | : | |
| Appellant | : | No. 356 EDA 2023 |

Appeal from the Judgment of Sentence Entered January 24, 2023
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-0001372-2021

BEFORE:  BOWES, J., OLSON, J., and McLAUGHLIN, J.

MEMORANDUM BY BOWES, J.:                     **FILED JUNE 06, 2024**

Matthew Rooney appeals from the aggregate judgment of sentence of seven to twenty years imposed after he was convicted by a jury of two counts of aggravated assault and one count each of recklessly endangering another person and endangering the welfare of children for the injuries inflicted upon his then six-month-old child, P.R.  We affirm.

We glean the following history from the record.  On October 18, 2020, Appellant was acting as the sole caretaker for his three children:  two-year-old B.R. and six-month-old twins J.R. and P.R.  The children's mother, Katie Shadrick, was out shopping for the day and Appellant had his father and sister over to watch the afternoon Philadelphia Eagles football game. Appellant's father and sister left around 3:00 p.m., and the game ultimately ended in a loss of twenty-eight to thirty at 4:31 p.m.

Meanwhile, at 4:00 p.m., Appellant called Ms. Shadrick because P.R. was vomiting. Approximately ten minutes later, while Ms. Shadrick was driving to their home, Appellant called again asking whether he should call an ambulance for P.R. because she fell and her eyes were rolling back in her head. Ultimately, Appellant called an ambulance and Ms. Shadrick proceeded immediately into the ambulance when she arrived home and rode with P.R. to the hospital. At that time, P.R. "was unconscious, doctors were not able to elicit any response, the baby was not breathing appropriately (having apneic episodes) with decerebrate posturing, all of which were indicators of a severe neurologic injury." Trial Court Opinion, 6/26/23, at 13 (citation omitted).

Appellant explained to the responding medical teams that P.R. had fallen off the changing table, immediately vomited, and shortly thereafter became unresponsive. *See* N.T. Trial, 11/1/22, at 61. Medical experts, however, opined at trial that "the injuries were indicative of child abuse and were not consistent with . . . [f]alling from a changing table." *Id*. at 64. Indeed, the medical testimony bore out that Appellant "violently sh[ook P.R.,] causing her to suffer blunt force or sudden impact trauma (shaken baby syndrome) to her head and brain." Trial Court Opinion, 6/26/23, at 13 (cleaned up).

Based on the foregoing, Appellant was charged with assaulting P.R. Prior to trial, the Commonwealth sought to introduce prior bad acts evidence against Appellant with regard to Ms. Shadrick, J.R., and B.R. The court denied the motion as to incidents of domestic violence against Ms. Shadrick but permitted the Commonwealth to introduce evidence pertaining to Appellant's

angry outbursts directed toward his children. At the conclusion of the trial, the jury found Appellant guilty as indicated hereinabove. With the aid of a pre-sentence investigation report, substance use, and psychological evaluations, the court imposed the above-referenced aggregate sentence. Appellant did not file a post-sentence motion.

This timely appeal followed. Appellant complied with the court's order to file a Pa.R.A.P. 1925(b) statement, and the trial court issued a responsive Rule 1925(a) opinion. In this Court, Appellant raises a single question for our consideration: "Did the trial court abuse its discretion by allowing the Commonwealth to present unduly prejudicial other acts evidence concerning Appellant's aggressive behavior around his other children?" Appellant's brief at 4.

Appellant's sole claim implicates the trial court's discretion in admitting evidence at trial. Since such decisions rest in the "sound discretion of the trial court[,]" we will reverse a court's evidentiary ruling "only upon a showing that the trial court clearly abused its discretion." *Commonwealth v. Ganjeh*, 300 A.3d 1082, 1091 (Pa.Super. 2023) (cleaned up). "An abuse of discretion is not merely an error in judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." *Id*. (cleaned up).

Appellant's particular challenge concerns other bad acts evidence admitted pursuant to Pa.R.E. 404(b), which provides in pertinent part:

(1) *Prohibited Uses.* Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) *Permitted Uses.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404(b)(1-2). In that regard, we have held that evidence of other bad acts "may be admissible in certain circumstances where it is relevant for some other legitimate purpose and not utilized solely to blacken the defendant's character." *Ganjeh*, 300 A.3d at 1091 (cleaned up). Notably, Rule 404(b) does not preclude all evidence that is prejudicial in nature, only unfairly prejudicial evidence. Trial courts are "not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged." *Commonwealth v. Tyson*, 119 A.3d 353, 360 (Pa.Super. 2015) (*en banc*) (cleaned up).

By way of background, the Commonwealth filed a motion *in limine* to admit other bad acts evidence pursuant to Rule 404(b). Specifically, the Commonwealth sought to elicit from Ms. Shadrick three accounts of domestic violence, one of which related to Appellant's anger at missing the 2018 Philadelphia Eagles Superbowl Parade because she went into labor with B.R. Additionally, it sought to introduce three aggressive outbursts involving J.R.

at four months old and B.R. when he was two years old. *See* Commonwealth's Motion *in limine* for Admission of Other Acts, 10/25/22, at 3-4. The Commonwealth argued that the proffered evidence was admissible to prove Appellant's knowledge and intent, and to rebut his defense that P.R.'s injuries were accidental. Following argument, the court excluded evidence of domestic violence pertaining to Ms. Shadrick, but ruled that Ms. Shadrick would be permitted to testify regarding seeing Appellant scream at J.R., pinch B.R., and break B.R.'s toy box after he drew on the wall. *See* N.T. 10/31/22, at 23. Appellant's counsel declined to have the trial court provide a contemporaneous curative instruction with that testimony. *Id*. at 26.

At trial, Ms. Shadrick testified specifically to these incidents as follows:

Q. What did you observe him doing?

A. Pinching the back of [B.R.]'s arm [when he was t]wo, two and a half.

. . . .

A. Ah, I had overheard him screaming at my youngest son, [J.R. when he was four months old.] . . . I had gone out and I was supposed to be out for longer, but I decided that I wanted to come home, and I was doing DoorDash, to make extra money for the kids, and [inaudible] and I came home sooner than he thought I was coming home, and I, we had to get, our back door [inaudible] and sort of a standing out, and I was sort of getting ready to walk in, and I heard [J.R.] and he was like hysterical, crying, and [Appellant] screamed at the top of his lungs, "Shut the 'F' up," and um, so I, you know, swung the door open, and I was just shocked that, who are you talking to like that, and he just looked completely shocked that like I had come home and saw that, like, he was not expecting anyone to be there.

. . . .

- 5 -

A. [B.R.] had drawn on the wall, with a crayon, and [Appellant] was furious about it, and we had this toybox where we keep all of [B.R.]'s toys, and it was some kind of sloth material, and he like ripped, ripped it, and threw all the toys everywhere, and was screaming about [B.R.] using the crayons on the wall [when he was a]bout two.

N.T. Trial, 11/1/22, at 91-94 ("inaudible" notations in original).

Of particular relevance, Dr. Stephanie Ann Deutsch testified as an expert in child abuse pediatrics and detailed her opinion that P.R. was the victim of abusive head trauma and child physical abuse. She explained that perpetrators of abusive head trauma are often triggered by "some type of situation that is frustrating to the caregiver[,]" and that the resulting abusive action is "one of aggression, frustration, [and] impulsivity[.]" N.T. Trial, 11/2/24, at 44-45. In discussing the final charges to the jury, Appellant's counsel again declined a cautionary instruction regarding this evidence. *Id*. at 199-200.

In its Rule 1925(a) opinion, the trial court explained that the admitted evidence demonstrated "his temper and inability to control his anger when dealing with childcare and stressful behavioral situations." Trial Court Opinion, 6/26/23, at 9 (cleaned up). Stated differently, it "provided insight into [Appellant's] relationship with his young children and the family dynamic pertaining to [Appellant's] quick temper and impatience with the infant and toddler children's developmental levels." *Id*. (cleaned up). The court explained that the "sole purpose of the evidence was to demonstrate [Appellant]'s possible state of mind at the time of the infliction of the victim's abusive head trauma, lack of accident, or absence of mistake." *Id*. at 10.

Additionally, it noted that the incidents were "part of the history and natural development of the case[.]" *Id*. at 11. Finally, the court offered an alternative analysis that even if it had erred in admitting the evidence, such error was harmless because any prejudice was *de minimis* and could not have contributed to the verdict. *Id*. at 11-12.

Appellant counters that the court's admission of these prior acts of aggression towards his other children "were used for the sole purpose of showing Appellant's propensity for aggression toward [all] his children[.]" Appellant's brief at 8. He argues that the court's rationale for admitting the evidence was unclear and inconsistent, and that the evidence was unequivocally used to "paint Appellant as an angry person who is aggressive around his children." *Id*. at 9. Even if admissible for a proper Rule 404(b) exception, Appellant posits that the trial court nonetheless erred in admitting it "because the potential for undue prejudice outweighed its probative value." *Id*. at 13. Finally, he alleges that the court's harmless error analysis is flawed and should be rejected. *Id*. at 13-14.

Upon review of the certified record, we conclude that the evidence regarding Appellant's aggressive and disproportionate reactions to frustrating situations involving his children was probative of his intent to inflict abusive head trauma upon P.R., as well as to refute Appellant's allegation of an accident. *See Commonwealth v. Johnson*, 160 A.3d 127, 144 n.15 (Pa. 2017) (noting that an appellate court "may affirm a trial court's evidentiary ruling if we deem it to have been correct on grounds other than those specified

by the court itself, particularly where the additional reason is apparent from the record" (cleaned up)). Critically, the victim could not tell the jury what happened, there were no other witnesses who could testify, and Appellant's version of events was deemed "not plausible." *Id*. at 39. Within this vacuum of firsthand observations of what happened and Appellant's explanation of an accident, which was determined to be medically incapable of causing such life-threatening injuries to P.R., this evidence became all the more salient to proving intent.

As to the weight of the prejudice resulting from the admission of this evidence, the record bears out that the incidents were not used solely to paint Appellant as an aggressive individual, and that their probative value was not outweighed by the potential for unfair prejudice. The incidents were comparatively minor and would not have had "a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." *Tyson*, 119 A.3d at 360 (cleaned up). Therefore, we glean no error in its admission. Since Appellant has not convinced us that he is entitled to relief regarding the only issue he raises on appeal, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/6/2024