J-A07010-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TRISTAN L. NICHOLSON | : | |
| | : | |
| Appellant | : | No. 627 MDA 2024 |

Appeal from the Judgment of Sentence Entered March 6, 2024
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0001806-2021

BEFORE:  BOWES, J., OLSON, J., and STABILE, J.

MEMORANDUM BY BOWES, J.:                    **FILED MARCH 25, 2025**

Tristan L. Nicholson appeals from the life sentence imposed after a jury found him guilty of first-degree murder.  We affirm.

This case stems from the death of Kelly Patton, with whom Appellant was romantically involved.  Despite this relationship, Appellant also began dating Takeisha Fountain in August 2020.  Ms. Fountain and Ms. Patton were aware of each other and exchanged heated messages about Appellant.  Additionally, around this time, Ms. Patton maintained phone contact with her ex-paramour, Arthur Carter, who was incarcerated.

Between November and December 2020, the relationship between Ms. Patton and Appellant deteriorated quickly.  On November 18, 2020, she and Appellant were asked to leave a Sheetz store due to a disruptive conflict.[1]

---

[1] The Commonwealth introduced video surveillance of this incident at trial.

Police twice responded to domestic disturbances between Appellant and Ms. Patton at her Harrisburg apartment during those months, though no injuries were reported and the police left each time without charging either individual. As further evidence of the declining relationship, Mr. Carter's jail phone logs recorded Ms. Patton begging Appellant to stop hurting her and, on a separate occasion, telling Mr. Carter that she could no longer talk to him for fear of Appellant killing her.

At approximately 10:30 p.m. on December 14, 2020, Appellant repeatedly banged on Ms. Patton's apartment door. Her friend, Jennifer Williams, lived next door with Christopher Theurer. Ms. Williams texted her about the knocking and Mr. Theurer went into the hallway to speak with Appellant. Although the knocking stopped after that, Ms. Patton did not reply to Ms. Williams, and her neighbors did not hear from her or see her alive afterwards.

On December 15, 2020, Appellant drove Ms. Patton's car to Ms. Fountain's apartment in York, where he stayed the night. That evening, Mr. Theurer saw that Ms. Patton's front door was open, but he did not enter her apartment.

On the morning of December 16, Appellant told Ms. Fountain that Ms. Patton killed herself. Upon further questioning, however, he confided in her that he had killed Ms. Patton with a cord because she was still talking to someone in jail. Appellant then asked Ms. Fountain to hide him and displayed defensive wounds that he had received on his body. Ms. Fountain left her

apartment with her children and immediately notified police of Appellant's confession. Police arrested Appellant and subjected him to a DNA buccal swab.

Early that afternoon, Mr. Theurer again noticed that Ms. Patton's front door was ajar. When he knocked this time, he also observed her lifeless body lying on the floor. He called 911, and responding officers found Ms. Patton deceased with an extension cord wrapped around her neck. Her apartment was in extreme disarray.

The autopsy revealed that Ms. Patton died sometime between the evening of December 14 and early December 15, from "traumatic brain injury, ligature strangulation[,] and manual strangulation." Trial Court Opinion, 8/7/24, at 10. The medical examiner determined that Ms. Patton's lethal neck injuries "were incompatible with self-infliction." *Id*. at 11. Additionally, the medical examiner opined that she would not have been able to survive the hemorrhaging around her brain and brainstem, which resulted from "an astronomical amount of force" being used to slam her head down. *Id*. DNA testing confirmed that Ms. Patton was a possible contributor to the mixture found on Appellant's wounds, and Appellant could be a contributor to the profile taken from Ms. Patton's fingernails.

Based on the foregoing, the Commonwealth charged Appellant with criminal homicide. In preparation for trial, the Commonwealth filed notice of its intent to introduce various pieces of bad acts evidence, many of which the trial court deemed admissible. Appellant thereafter proceeded to a jury trial,

at the conclusion of which he was found guilty of first-degree murder. The court sentenced Appellant to the mandatory term of life imprisonment without the possibility of parole. After his post-sentence motions were denied, he timely appealed to this Court. The trial court ordered Appellant to file a concise statement pursuant to Pa.R.A.P. 1925(b), which he did upon receipt of the relevant transcripts.[2] In response, the trial court authored a Rule 1925(a) opinion.

Appellant presents the following issues for our consideration:

1. Whether the trial court erred in admitting evidence of prior bad acts. Specifically:

---

[2] We remind the trial court that the issuing court must include the following in every Rule 1925(b) order:

(i) the number of days after the date of entry of the judge's order within which the appellant must file and serve the Statement;

(ii) that the Statement shall be filed of record;

(iii) that the Statement shall be served on the judge pursuant to paragraph (b)(1) and both the place the appellant can serve the Statement in person **and the address** to which the appellant can mail the Statement. In addition, the judge may provide an email, facsimile, or other alternative means for the appellant to serve the Statement on the judge; and

(iv) that any issue not properly included in the Statement timely filed and served pursuant to subdivision (b) **shall be** deemed waived.

Pa.R.A.P. 1925(b)(3) (emphases added). The court's current order template does not comply with subsections (iii) or (iv).

- 4 -

a. The Commonwealth's request to admit testimony and evidence of police contact regarding reports of "disturbances."

b. The Commonwealth's request to admit testimony and evidence regarding an incident at Sheetz in Paxton Street.

c. The Commonwealth's request to admit the phone call between [Ms. Patton] and Mr. Carter.

d. The court erred in admitting the Commonwealth's evidence that on December 9, 2020, Swatara police responded to a 911 call from [Ms. Patton's apartment].

Appellant's brief at 4 (cleaned up).

Since these challenges implicate the court's admission of bad acts evidence pursuant to Pa.R.E. 404(b), we consider them pursuant to the following legal tenets:

> Evidence is admissible if it is relevant—that is, if it tends to establish a material fact, makes a fact at issue more or less probable, or supports a reasonable inference supporting a material fact—and its probative value outweighs the likelihood of unfair prejudice. Admissibility of evidence is within the sound discretion of the trial court and we will not disturb an evidentiary ruling absent an abuse of that discretion.

**Commonwealth v. Hicks**, 156 A.3d 1114, 1125 (Pa. 2017) (cleaned up).

"An abuse of discretion is not merely an error in judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." **Commonwealth v. Ganjeh**, 300 A.3d 1082, 1091 (Pa.Super. 2023) (cleaned up).

- 5 -

Rule 404(b) governs the admissibility of other crimes or wrongful acts, and provides in pertinent part as follows:

(1) *Prohibited Uses.* Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) *Permitted Uses.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404. It "may also be admissible under the *res gestae* exception, where such evidence became part of [the] history of the case and formed part of the natural development of [the] facts." **Ganjeh**, 300 A.3d at 1091 (cleaned up).

In Appellant's first and fourth claims of error, he attacks the admission of evidence about police responses to domestic disturbances at Ms. Patton's apartment on November 5, 2020, and December 9, 2020, respectively. The court explained that it found the testimony admissible, in part, because it demonstrated "the volatile relationship between [Appellant] and Ms. Patton, [Appellant]'s association with the address at which police found Ms. Patton's body, and the escalation of abuse which formed the history of the case." Trial Court Opinion, 8/7/24, at 14. Although the court erroneously described both disturbances as occurring in December in its Rule 1925(a) opinion, it clearly articulated in the order granting the Commonwealth's request to introduce this piece of Rule 4040(b) evidence that the "November 5, 2020" response

- 6 -

was admissible "as probative of a volatile relationship between [Appellant] and the victim." Order, 1/26/24.

Assailing the court's dating mistake in its subsequent opinion, Appellant emphasizes that the first incident did not happen one week before the murder, but one month before. *See* Appellant's brief at 19. Moreover, he maintains that the probative value of this evidence was minimal because the police response did not result in any charges and there was no evidence of physical abuse. *Id*.

Upon review, we discern no abuse of discretion on the trial court's part in admitting this evidence under the *res gestae* exception to provide the jury a more complete picture of the increased volatility in the relationship between Appellant and Ms. Patton preceding her murder. *See Ganjeh*, 300 A.3d at 1091 (evidence of domestic abuse in September 2017, December 2017, and February 2018, was admissible as part of the history of the case demonstrating the escalation that resulted in the defendant murdering the victim in August 2018). Further, any prejudice resulting from introduction of this evidence was outweighed by the probative value of portraying for the jury "the history and natural development of the events and offenses for which [Appellant wa]s charged." *Ganjeh*, 300 A.3d at 1091.

Next, Appellant attacks the video surveillance wherein he and Ms. Patton were asked to leave a Sheetz store. The court found this evidence admissible to demonstrate Appellant's "connection with and knowledge of Ms. Patton" and further related to "the history of the case, namely, the escalating tension

leading up to the date of the killing less than one month later." Trial Court Opinion, 8/7/24, at 15; **see also** Order, 1/26/24 (admitting evidence "as probative of a volatile relationship between [Appellant] and the victim").

Appellant argues that knowledge was an improper basis to admit this evidence because his defense was that he did not murder Ms. Patton, not that he did not know her. **See** Appellant's brief at 20. He insists that it can not be part of the history of the case because it happened approximately one month before the murder. **Id**. at 21. Further, he contends that the evidence lacked probative value because it portrayed both individuals "potentially acting improperly" and, due to the absence of audio, did "not provide any contextual support that there were any fears that [Ms. Patton] experienced." **Id**. at 23.

Once again, we deduce no error in the trial court exercising its discretion to admit this testimony under the *res gestae* exception. As with the domestic disturbances in the month prior, this evidence informed the jury of the declining dynamics between Appellant and Ms. Patton in the month before her death. We are not persuaded by Appellant's argument that it was so far removed as to not be a part of the natural development of the facts of this case. **See Ganjeh**, 300 A.3d at 1091. Moreover, the probative value of this evidence outweighed any potential prejudice. **Id**.

Finally, Appellant challenges the admission of Ms. Patton's phone calls with Mr. Carter. The court deemed these recorded jail calls admissible as evidence of Appellant's "controlling behavior" and as "relevant to the element

of intent" and Ms. Patton's fear of Appellant. *See* Trial Court Opinion, 8/7/24, at 16-17. Appellant iterates that the calls did not prove "homicidal intent[,]" but rather only demonstrated "domestic disharmony." Appellant's brief at 23. He maintains further that the evidence presented at trial took away all doubt as to whether the murder was intentional, leaving only the perpetrator's identity in question. *Id*. at 25-26.

The certified record supports the court's decision regarding the admissibility of this evidence. The calls were probative of Appellant's intent, corroborated his confessed motive for the killing, and formed part of the history of their relationship and its imminent demise in the month preceding Ms. Patton's murder. Thus, we observe no abuse in the court's exercise of its discretion in this regard.

At the end of his brief, Appellant alternatively alleges that the prejudicial impact of all the bad acts evidence outweighed any probative value because the court did not instruct the jury on the limited nature to which it could consider the evidence. *See* Appellant's brief at 26. It is well-settled that a "defendant is entitled **upon request** to a jury instruction explaining to the jury that the specific evidence is only admissible for one or more of the" Rule 404(b) exceptions. *Commonwealth v. Tedford*, 960 A.2d 1, 37 (Pa. 2008) (cleaned up, emphasis added). Critically, Appellant has neither alleged that he requested a limiting instruction nor pointed us to where such a request was made and denied by the trial court. As we have explained, this Court will "not develop an argument for an appellant, nor shall we scour the record to find

evidence to support an argument; instead, we will deem [the] issue to be waived." ***Milby v. Pote***, 189 A.3d 1065, 1079 (Pa.Super. 2018) (cleaned up). As such, any claim attacking the lack of instructions regarding the jury's consideration of the admitted Rule 404(b) evidence is waived.

Based on the foregoing, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____

Benjamin D. Kohler, Esq.
Prothonotary

Date: 03/25/2025