J-S10008-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES DAVID BIBBUS | : | |
| | : | |
| Appellant | : | No. 911 MDA 2024 |

Appeal from the Judgment of Sentence Entered May 15, 2024
In the Court of Common Pleas of Berks County Criminal Division at
No(s):  CP-06-CR-0000995-2023

BEFORE:  BOWES, J., OLSON, J., and SULLIVAN, J.

MEMORANDUM BY BOWES, J.:                    **FILED: APRIL 23, 2025**

James David Bibbus appeals from the aggregate judgment of sentence of twenty to fifty-nine years of imprisonment, followed by three years of probation, imposed after a jury convicted him for attempt to commit statutory sexual assault, attempt to commit involuntary deviate sexual intercourse ("IDSI"), aggravated indecent assault, unlawful contact with a minor, indecent exposure, corruption of minors, and indecent assault.  We affirm.

This case originated from the events of July 6 and 7, 2022, which we glean from the trial testimony of then-fifteen-year-old K.K.  *See* N.T. Trial, 1/30-31/24, at 131-78.  On July 6, the father of K.K. and her younger sister drove them to the home of D.V., their mother.  K.K. saw thirty-seven-year-old Appellant by the house's detached garage and asked her mother who he was.  D.V. indicated that he was a friend, and suggested K.K. go say hello to

him. She did, and Appellant and K.K. spoke for approximately forty-five minutes, during which Appellant inquired about things such as K.K.'s family, age, plans for when she finished school, and use of social media. After the conversation ended and K.K. headed back to the house, Appellant added her as a friend on Snapchat and she accepted the request.

A few hours later, Appellant sent a Snapchat message to K.K. requesting a photo of her, and she sent him some of her face. Appellant responded with photos of himself, topless and with his bottoms low enough that the area below his waist, but above his genitals, was visible. A bit later, Appellant sent K.K. a photo of his penis. K.K. did not respond.

In the early morning hours of the following day, at approximately 4:00 a.m., Appellant messaged K.K. to suggest she return to the garage. K.K. did so, wearing a tank top and shorts, and sat nearby using her smartphone while Appellant worked on his car. At some point Appellant began touching K.K., first rubbing her thigh, then her vaginal area over her clothes. After returning to her thigh, he pulled her bottoms to the side and rubbed between her legs. Appellant's fingers penetrated her outer labia, but not her vagina. He next kissed her on the mouth and thighs, and on her genitals, over her clothes. Appellant then pulled out his penis and held it inches from K.K.'s face. He backed off when she turned her head away, but thirty seconds later tried again to put his penis in her mouth. K.K. said no and turned away, after which Appellant put his penis back into his pants.

While K.K. was still there with Appellant, a friend of D.V. banged on the garage door and yelled at K.K. to return to the house. She did so and learned that her mother was not happy that she had been in the garage. Later that day, Appellant told K.K. that he would do anything for her. She asked him to buy her a vape device. K.K. snuck out of the house when Appellant returned with the vape and retrieved it from him while he remained in his car. Thereafter, K.K. told her mother about the incident, but D.V. did not notify authorities.

K.K. subsequently had a Snapchat exchange with Appellant about the fact that her mother knew, prompting Appellant to direct K.K. to erase the messages, change her password, and admit nothing. Approximately one month after the incident, K.K. told another of her mother's friends about what happened with Appellant, and the friend called the police. K.K. participated in a forensic interview witnessed by Detective Jordan P. Smith of the Lower Heidelberg Township Police Department. As a result of what he heard, Detective Smith initiated this case by criminal complaint.

Appellant proceeded to a jury trial on the above-referenced charges at which K.K., D.V., and Detective Smith testified.[1] Appellant's defense was to suggest that K.K. and her mother fabricated the allegations by pointing out

---

[1] The Commonwealth additionally proffered exhibits including some of the photos and messages Appellant sent to K.K., as well as data from Snapchat evincing the date and time of the messages they exchanged but not the content thereof. *See* Commonwealth's Exhibits 1-9.

inconsistencies in their recounting of events. Of note, Appellant cross-examined K.K. with statements she made at the preliminary hearing that were inconsistent with her trial testimony about whether Appellant performed oral sex on her and how many inches from her face Appellant placed his penis. *See* N.T. Trial, 1/30-31/24, at 172-75. He further queried why K.K. had saved some of their Snapchat communications while deleting others, went to the garage after he sent inappropriate photos, and felt safe going to meet him later on July 7, 2022, after what had happened in the garage. *Id*. at 165-80.

In her testimony, D.V. confirmed that Appellant was at her residence that day using the garage to paint his car. His partner, who had dropped Appellant off several times before, was not there that day. D.V. indicated that Appellant left before she locked the garage at 10:00 or 11:00 that night, and kept the only key on her bedside table. *Id*. at 203, 210, 217. She further acknowledged that K.K. had made false statements in the past, such as lying about vaping, but denied that K.K. had ever falsely alleged sexual assault. *Id*. at 212-13.

Also pertinent to this appeal, Appellant cross-examined Detective Smith about variations between the allegations in the criminal complaint and the facts testified to by K.K. at trial. Specifically, the complaint alleged that Appellant performed oral sex on K.K. and asked her to perform oral sex on him, but at trial she indicated that Appellant only put his mouth between her legs over her clothing and that he said nothing when he put his penis by her

face. *Id*. at 241-42. Appellant elicited from the detective that the complaint was based upon K.K.'s statements at the forensic interview. *Id*. at 243-44.

On re-direct, the Commonwealth questioned the detective about a host of statements K.K. made during the interview, some of which were consistent and some inconsistent with her trial testimony, including that Appellant sent photos of himself partially nude, touched her thigh, kissed her neck, exposed his penis to her, asked her to perform oral sex on him, moved her shorts and underwear aside to expose her genitals, digitally penetrated her vagina, and performed oral sex on her. *Id*. at 245-49. After more than a dozen such questions, Appellant made a somewhat vague objection. *Id*. at 247 ("Judge, I'm going to object. Again, her testimony is -- is controlling. We're just going through what was said during the forensic interview."). The Commonwealth responded that Appellant had opened the door to such questions, and asserted that K.K.'s forensic interview statements were admissible as "prior consistent statements -- or inconsistent statements that may be considered." *Id*. The court overruled the objection upon observing that Appellant had asked questions about the contents of the interview. *Id*. at 248.

Appellant elected not to testify. However, he presented his partner, Danielle Fiorito, as an alibi witness. She claimed to have been with Appellant in the garage helping him sand the car while K.K., D.V., and other people were there. At approximately 12:30 a.m., Appellant had everyone, including K.K., exit the garage while he painted the car. After about twenty minutes,

everyone went back inside the garage until Appellant left with Ms. Fiorito ten minutes later. The two of them went home, went to bed, and did not leave again that night. *Id*. at 264-75.

In the end, the jury rendered guilty verdicts on all counts. On May 15, 2024, the court found that Appellant was not a sexually violent predator and sentenced him as indicated above. Appellant filed a timely post-sentence motion challenging, *inter alia*, the weight of the evidence. The court promptly denied the motion, and Appellant filed the instant timely appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.[2]

Appellant presents the following questions for our review:

I.    Did the trial court abuse its discretion in allowing into evidence prior consistent statements made by K.K.[3] at a forensic interview and, if so, does this error justify a new trial?

II.    Did the trial court err in denying the Appellant's motion for a new trial as the verdict was against the weight of the evidence?

Appellant's brief at 13.

---

[2] The trial court suggests that Appellant's statement was impermissibly vague as to a claim of error that he does not pursue on appeal. Given this abandonment, we have no cause to determine whether Appellant's compliance with Rule 1925(b) was deficient in that regard.

[3] Appellant refers to K.K. and her mother by their initials, but without periods after each letter. We have added the punctuation in all quotes herein from Appellant's brief.

Appellant's first issue assails an evidentiary ruling made by the trial court. To this claim, we apply the following standard of review:

> The admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion. An abuse of discretion is not merely an error in judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.

*Commonwealth v. Ganjeh*, 300 A.3d 1082, 1091 (Pa.Super. 2023) (cleaned up).

Appellant's argument focuses on the admissibility of K.K.'s forensic interview statements pursuant to Pa.R.E. 613, which provides as follows:

> **(a) Witness's Prior Inconsistent Statement to Impeach**. A witness may be examined concerning a prior inconsistent statement made by the witness to impeach the witness's credibility. The statement need not be shown or its contents disclosed to the witness at that time, but on request, the statement or contents must be shown or disclosed to an adverse party's attorney.
>
> **(b) Extrinsic Evidence of a Witness's Prior Inconsistent Statement**. Unless the interests of justice otherwise require, extrinsic evidence of a witness's prior inconsistent statement is admissible only if, during the examination of the witness,
>
> (1) the statement, if written, is shown to, or if not written, its contents are disclosed to, the witness;
>
> (2) the witness is given an opportunity to explain or deny the making of the statement; and
>
> (3) an adverse party is given an opportunity to question the witness.
>
> This subdivision does not apply to an opposing party's statement as defined in Rule 803(25).

**(c) Witness's Prior Consistent Statement to Rehabilitate**. Evidence of a witness's prior consistent statement is admissible to rehabilitate the witness's credibility if the opposing party is given an opportunity to cross-examine the witness about the statement and the statement is offered to rebut an express or implied charge of:

(1) fabrication, bias, improper influence or motive, or faulty memory, provided that the statement was made before the alleged fabrication, bias, improper influence or motive, or faulty memory arose; or

(2) having made a prior inconsistent statement, which the witness has denied or explained, and the consistent statement supports the witness's denial or explanation.

Pa.R.E. 613.

Appellant argues that the Commonwealth improperly brought K.K.'s prior forensic interview statements through Detective Smith, rather than when K.K. was on the stand and could have been cross-examined about them, and that K.K. had not attempted to explain or deny the prior inconsistent statements when she testified. *See* Appellant's brief at 25. He asserts that the error was not harmless because, by doing as the Commonwealth did, it was able "to trumpet the most incriminating version of K.K.'s allegations, unsubjected to cross[.]" *Id*. at 26. Since the Commonwealth had no "physical evidence or other witness testimony, and little circumstantial evidence," the credibility of K.K.'s accusations was critical, and this improper bolstering of it cannot be deemed to have had no contribution to the verdict. *Id*.

Appellant fails to address the Commonwealth's primary justification for the challenged questioning of Detective Smith, namely that Appellant opened

the door to it by himself cross-examining the detective about the forensic interview. As this Court has explained:

> One who induces a trial court to let down the bars to a field of inquiry that is not competent or relevant to the issues cannot complain if his adversary is also allowed to avail himself of that opening. The phrase "opening the door" by cross examination involves a waiver. If defendant delves into what would be objectionable testimony on the part of the Commonwealth, then the Commonwealth can probe further into the objectionable area.

*Commonwealth v. Gilbert*, 269 A.3d 601, 613 (Pa.Super. 2022) (cleaned up).

Here, although Appellant cross-examined K.K. with her prior inconsistent statements at the preliminary hearing, he did not question her about what she said during the forensic interview. Instead, he waited to bring those statements in through his cross-examination of Detective Smith, thereby effectively impeaching both K.K.'s credibility and that of the detective who included those allegations in the criminal complaint. In these circumstances, we conclude that the trial court acted within its discretion in ruling that Appellant opened the door to the line of questioning. No relief is due.

Appellant's remaining claim is that his verdict is against the weight of the evidence. The following principles guide our review of this issue:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts,

certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.

*Commonwealth v. Arias*, 286 A.3d 341, 352 (Pa.Super. 2022) (cleaned up).

Therefore, our task is to determine whether the trial court, in ruling on Appellant's weight challenge, "abused its discretion by reaching a manifestly unreasonable judgment, misapplying the law, or basing its decision on partiality, prejudice, bias, or ill-will." *Commonwealth v. Clay*, 64 A.3d 1049, 1056 (Pa. 2013) (cleaned up).

The trial court opined that Appellant waived his weight challenge by failing to identify in his Rule 1925(b) statement which verdicts were implicated or "the specific reasons why the verdicts were contrary to the weight of the evidence." Trial Court Opinion, 8/29/24, at 13. Nonetheless, it addressed the claim as follows:

Instantly, the jury heard the testimony and evidence presented during trial and, as the finder of fact, was able to resolve any conflicts and make determinations of credibility as to the weight it afforded such testimony. This court, who likewise viewed the testimony and evidence presented during trial, did not find that the verdict of the jury shocked one's sense of justice.

*Id*. at 14.

Arguing the issue in this Court, Appellant asserts that the evidence weighing in favor of the Commonwealth was only "the word of K.K. and

ambiguous Snapchat messages between the two prior and subsequent to the alleged offenses." Appellant's brief at 27. He points to the lack of physical evidence or independent witness corroboration, and claims that other evidence provided "significant reasons" to doubt K.K.'s allegations. *Id*. Appellant cites the fact that K.K. did not report the abuse right away and asserts that, when she did, "[h]er mother decided to not report the allegations to police because K.K. has a history of making false/exaggerated accusations." *Id*. He continues:

> Interestingly, and perhaps most importantly, the alleged assault occurred in a garage that had been locked and to which neither K.K. nor the Appellant had a key. D.V. testified that between ten and [eleven] p.m. on July 6, 2022, she locked the garage on her property and observed Appellant leave. She had the only key and kept it by her nightstand. K.K. testified that the alleged offenses occurred around four a.m. on the morning of July 7, 2022, in the garage where Appellant was painting his car. No evidence was presented demonstrating how Appellant entered with his car into a locked garage to which he did not have a key. The existence of the locked garage fact is much more consistent with the testimony of [Ms.] Fiorito, the girlfriend of Appellant who testified she was with [him] the evening of the alleged offenses, that no offenses occurred, and that he and she left late at night and did not come back.

*Id*. at 27-28 (citations and unnecessary articles and capitalization omitted). Appellant concludes that his convictions, "which allegedly occurred in a locked garage to which he did not have a key based on the word of a girl whose own mother does not believe," thus shocks one's sense of justice. *Id*. at 28.

Assuming *arguendo* that this issue was preserved for our review, it fails on its merits.[4]  Appellant points to no facts which were clearly of greater weight that the trial court failed to consider in finding the verdict not shocking. Notably, while D.V. acknowledged that K.K. had made false statements in the past, such as about whether she had been vaping, she denied that K.K. had made allegations like this before or that the past untruthfulness was the reason she did not contact the police immediately.[5]  **See** N.T. Trial, 1/30-31/24, at 212-13.  More glaringly, the two witnesses upon whom Appellant's argument rests, namely D.V. and Ms. Fiorito, recounted vastly disparate versions of the events of July 6 and 7, 2022, including whether each was even in the other's presence while Appellant supposedly was sanding and painting his car in the middle of the night.  **Compare id**. at 203-217 **with id**. at 264-275.

Ultimately, the trial court's conclusion that the jury reasonably ascribed more weight to K.K.'s testimony and the corroborating Snapchat evidence

---

[4] While Appellant's Rule 1925(b) statement baldly stated that the verdicts were contrary to the weight of the evidence, he provided more detail about the nature of his complaints in his post-sentence motion.  **See** Post-Sentence Motion, 5/23/24, at ¶ 6 (citing the testimony of D.V. and Ms. Fiorito, albeit not to the extent argued on appeal).

[5] D.V. acknowledged that she used illegal drugs during the relevant time period, "most likely" had used some before K.K. and her sister came home, and attributed her "wrong decision" not to contact police to the fact that she "had so much going on at the time," such as being in the process of losing her home, having no vehicle.  **See** N.T. Trial, 1/30-31/24, at 205.

than to the self-serving testimony of D.V. and Ms. Fiorito is supported by the record and is not based "on partiality, prejudice, bias, or ill-will." *Clay*, 64 A.3d at 1056 (cleaned up). Consequently, the court's ruling shall not be disturbed by this Court.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 04/23/2025