J-S33043-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSE P. SANTIAGO | : | |
| | : | |
| Appellant | : | No. 2314 EDA 2023 |

Appeal from the Judgment of Sentence Entered July 28, 2023
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0004232-2019

BEFORE: BOWES, J., NICHOLS, J., and BECK, J.

MEMORANDUM BY BECK, J.: **FILED FEBRUARY 6, 2026**

Jose P. Santiago ("Santiago") appeals from the judgment of sentence imposed by the Delaware County Court of Common Pleas ("trial court") following his convictions of rape by forcible compulsion; involuntary deviate sexual intercourse ("IDSI") by forcible compulsion; indecent assault of a person less than thirteen years of age; corruption of minors, rape of a child, and IDSI with a child.[1] On appeal, Santiago challenges the sufficiency of the evidence to establish his age at the time of the offenses, the weight of the evidence supporting the victim's age, the admission of allegedly inflammatory photographs and other evidentiary issues, and the sentence imposed.

_____

[1] 18 Pa.C.S. §§ 3121(a)(1), 3123(a)(1), 3126(a)(7), 6301(a)(1)(i), 3121(c), 3123(b).

Santiago is not entitled to relief on any of these issues. Nevertheless, because a portion of Santiago's sentence is illegal, we vacate his judgment of sentence and remand with instructions.

Santiago committed these sexual crimes against his girlfriend's twelve-year-old sister K.M. sometime in 2018. K.M. recalled that the crimes occurred at the home of her eldest sister, A.C., when K.M. was visiting overnight for two nights. A.C. and K.M.'s middle sister, B.C., was also staying at the house, accompanied by Santiago and their baby. At the time of the incident, which was approximately five years prior to trial, A.C. and B.C. were both adults, as was Santiago. While she was sleeping alone in her cousin's bedroom on the second night of her stay, K.M. awoke when Santiago crawled on top of her. Santiago duct taped K.M.'s mouth, pulled off her pants, vaginally raped her, then turned her over, taped her hands together behind her back, and anally raped her. Santiago told K.M. if she told anyone, he would hurt both her and anyone she told.

Heeding Santiago's warning, K.M. told no one, but wrote about the assault in her journal. In March of 2019, K.M.'s parents found the journal, which prompted an investigation and criminal charges against Santiago. K.M., who had turned thirteen in January, underwent a forensic interview and a physical examination by Dr. June Elcock-Messam, a board-certified general pediatrician and child abuse pediatrician. During the examination, Dr. Elcock-

Messam took three photographs of K.M.'s vulva and vagina to document a transection she observed in K.M.'s hymen.

At Santiago's February 2023 jury trial, K.M., who had just turned seventeen, testified about the incident and aftermath. Others testifying at the trial included A.C.; Dr. Elcock-Messam as an expert witness; Officer Jennifer Jones, one of the investigating police officers; and Jovanni Velez, a representative of the Child Advocacy Center. Following the three-day trial, the jury convicted Santiago of the five felonies and one misdemeanor detailed above.

On July 28, 2023, the trial court sentenced Santiago to an aggregate term of twenty-five to fifty years of incarceration for the felony convictions followed by five years of probation for corruption of minors. Specifically, the trial court imposed two consecutive terms of incarceration (fifteen to thirty years for rape of a child followed by ten to twenty years for IDSI with a child) with two concurrent terms of incarceration (five and one-half to twenty years each for rape forcible compulsion and IDSI forcible compulsion). The trial court determined that his conviction of indecent assault of a person less than thirteen merged with his other convictions for sentencing purposes. As a Tier III offender under the Sexual Offender Registration and Notification Act ("SORNA"), Santiago is subject to lifetime registration. 42 Pa.C.S. §§ 9799.14(c), 9799.15(a)(2). He filed a post-sentence motion challenging, inter alia, the weight of the evidence establishing K.M.'s age and the

- 3 -

discretionary aspects of his sentence, which the trial court denied. This timely-filed appeal followed.[2]

Santiago raises five issues on appeal, which we have re-ordered for ease of disposition:

1. Whether the evidence was insufficient to establish corruption of minors, age 18 or above, 18 Pa.C.S. § 6301(a)(1)(i), inasmuch as the Commonwealth did not demonstrate beyond a reasonable doubt that the accused was age eighteen or above at the time of the alleged incident; testimony to the age of the accused lacked sufficient specificity and foundational knowledge to substantiate the requisite elements of appellant's age?

2. Whether the weight of the evidence did not support a conviction of indecent assault of a person less than thirteen years of age, 18 Pa.C.S. § 3126(a)(7), rape of a child, 18 Pa.C.S. § 3121(c), and involuntary deviate sexual intercourse of a child, 18 Pa.C.S. § 3123(b), insomuch as the evidence of record regarding whether the complainant was under thirteen years old at the time of the incident was so inherently unreliable that the determination of appellant's guilt was manifestly unreasonable all of which is in violation of appellant's due process rights under the state and federal constitutions?

_____

[2] This Court issued a rule to show cause as to why it should not dismiss Santiago's appeal based upon what appeared from the docket to be a late filing of the post-sentence motion one day past the ten-day deadline. **See** Pa.R.Crim.P. 720(A)(1), (3) (imposing deadline for filing post-sentence motions no later than ten days after judgment of sentence is imposed); **Commonwealth v. Dreves**, 839 A.2d 1122, 1127 (Pa. Super. 2003) (en banc) (holding that the untimely filing of a post-sentence motion does not toll the thirty-day period to file an appeal from the judgment of sentence). Santiago responded by directing this Court to the time stamp on the post-sentence motion, which indicated that he filed it on August 7, 2023, notwithstanding the trial court's belated docket entry. We are satisfied that the filing of the post-sentence motion and subsequent notice of appeal was timely.

3. Whether the trial court erred in permitting, over defense objection, the introduction of Commonwealth Exhibit C-3, a photo of the child complainant's vagina, and to publish those photos to the jury through an expert witness' testimony for the purpose of showing physical signs of trauma where the photos were highly prejudicial and alternative means were available for the Commonwealth's expert to discuss their observations of the child's physical condition at the time of her gynecological exam, and evidence of trauma also entered evidence through the expert's testimony.

4. Whether the trial court erred and abused its discretion with multiple evidentiary rulings that allowed the prosecutor to repeatedly use leading questions during direct examination, admitted impermissible hearsay, and permitted Commonwealth witnesses to read into the record from transcripts absent foundation such that the cumulative effect of these evidentiary determinations was highly prejudicial and deprived the accused of a fair trial?

5. Whether the trial court erred as a matter of law and violated the discretionary aspect of sentencing when it imposed a manifestly excessive and unreasonable aggregate sentence of 25 years to 50 years of incarceration upon appellant, insomuch as the trial court relied upon the complainant's age as a factor in determining the consecutive nature of the sentences at counts 15 and 16 even though the complainant's age is a requisite element of both of those counts and already accounted for in the sentencing guidelines; additionally the trial court did not give sufficient weight to appellant's background, personal history and individualized rehabilitative needs?

Santiago's Brief at 5-7 (answers and footnotes omitted).

**Sufficiency of Evidence Regarding Santiago's Age**

Santiago contends that Commonwealth introduced insufficient evidence to establish beyond a reasonable doubt that he was at least eighteen at the time he committed the crime of corruption of minors because testimony regarding his age "lacked sufficient specificity and … foundational knowledge."

*Id.* at 26-27. He assails the Commonwealth's failure to call a witness who was present at his birth or who was "so situated to have positive knowledge and remembrance of the date thereof." *Id.* at 27 (quoting ***Commonwealth v. Robinson***, 399 A.2d 1084, 1085 (Pa. Super. 1979) (en banc), *aff'd*, 438 A.2d 964 (Pa. 1981)). Santiago emphasizes that K.M. testified that he was an adult without knowing his exact age or even whether his age was close to that of her sister B.C.; K.M.'s eldest sister, A.C., only testified that he was around twenty years of age through leading questions from the prosecutor. *Id.* (quoting N.T., 2/15/2023, at 95-96, 267).

We abide by the following standard in reviewing a challenge to the sufficiency of the evidence:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

***Commonwealth v. Wellman***, 344 A.3d 13, at *3 (Pa. Super. 2025) (citation omitted). Whether the evidence is sufficient to sustain a conviction presents a pure question of law for which our standard of review is de novo. ***Commonwealth v. Akeley***, 320 A.3d 106, 110 (Pa. Super. 2024).

- 6 -

The crime of corruption of minors requires that the Commonwealth prove that the defendant was "of the age of 18 years and upwards" when committing "any act" that "corrupts or tends to corrupt the morals of any minor less than 18 years of age." 18 Pa.C.S. § 6301(a)(i). The Commonwealth need not prove the defendant's exact age at the time of the offense based upon the plain language of the statute. *Commonwealth v. Miller*, 657 A.2d 946, 947-48 (Pa. Super. 1995). Circumstantial evidence that permits the factfinder to infer that the defendant was at least eighteen years old, such the opportunity to observe the defendant's physical appearance at trial or testimony about the defendant's participation in adultlike activities, sufficiently establishes section 6301's age element. *See id.* at 948 (sufficient circumstantial evidence to establish defendant's age under section 6301 based upon defendant's physical appearance and testimony that he had been married before and was dating the minor victim's mother); *Commonwealth v. Jones*, 461 A.2d 267, 268 (Pa. Super. 1983) (same); *see also Commonwealth v. Nelson*, 467 A.2d 638, 640 (Pa. Super. 1983) (jury could infer defendant's general age from his physical appearance and victim's testimony that she saw him drinking alcohol in a bar and he told her he once lived in a college dorm for purposes of aged-based crimes).

In the instant case, K.M. positively identified Santiago at trial, N.T., 2/15/2023, at 90, which gave the jury an opportunity to infer his age from his appearance, including whether he had been eighteen or older at the time of

the incident. K.M. testified as to her date of birth and that she had just turned seventeen the month prior to the trial. *Id.* at 87. She testified that at time of the offense: she was eleven or twelve years old; Santiago was an adult, although she was unsure of his precise age or whether he was close in age to her sister B.C., whom he was dating. *Id.* at 96. A.C. also testified that Santiago was an adult and responded affirmatively when the prosecutor asked her (without objection) if Santiago had been "around 20 years of age" at the time of the incident. *Id.* at 89. Viewing this evidence in the light most favorable to the Commonwealth, as our standard of review requires, this testimony, combined with the jury's observation of Santiago, is sufficient to establish that Santiago was at least eighteen at the time of the offense. *See Wellman*, 2025 WL 2383852, at *3; *Miller*, 657 A.2d at 948; *Jones*, 461 A.2d at 268; *Nelson*, 467 A.2d at 640.

The case cited by Santiago does not compel a different result. In *Robinson*, a defendant's older sister testified that he was over eighteen at the time he committed statutory rape based upon her recollection of her age when her parents brought him home from the hospital and her estimation of how long it had been since he finished school. *Robinson*, 399 A.2d at 1085. She further stated that on his next birthday, the defendant "should be 19, I guess." *Id.* This Court considered whether the sister's testimony sufficiently established his age because she was not present at his birth and she admitted to estimating his exact age. *Id.* at 1086.

We observed that some other jurisdictions have stated that "the best proof of age is the testimony of living witnesses who were present at the birth and distinctly remember the event, or who, although not present, yet were so situated as to have positive knowledge and remembrance of the date thereof." *Id.* (quoting *Messina v. New York Life Ins. Co.*, 161 So. 462, 464 (Miss. 1935)). We rejected such a firm evidentiary requirement, instead favoring the approach of the Supreme Court of North Carolina, which permits witnesses who have adequately observed a defendant to offer their lay opinion regarding a defendant's age for purposes of establishing the age element of a crime. *Id.* at 1086 (citing *State v. Gray*, 233 S.E.2d 905 (N.C. 1977)). This Court decided that the sister's testimony was sufficient to establish that the defendant was eighteen or older if believed by the factfinder, which was tasked with determining witness credibility. *Id.*

Not only does Santiago fail to rely on the actual holding of *Robinson*, he fails to recognize that our Supreme Court affirmed *Robinson* and, when doing so, it pointedly stated that the defendant's argument—that the testimony produced was too weak and inconclusive to establish sufficiently that he was over eighteen at the time of the statutory rape—was "conspicuously groundless." *Robinson*, 438 A.2d at 966. Because it was up to the factfinder to appraise the sister's credibility and the extent of any qualifications of her testimony, the sister's testimony "was sufficient to support the factfinder's verdict with reason and not surmise." *Id.*

The jury heard the testimony of K.M. and A.C. as to Santiago's age and had the opportunity to view him and determine the accuracy of that testimony. This is sufficient evidence to support a finding that he was eighteen at the time of the offense. Any uncertainty in witness testimony goes to the weight of the evidence, not its sufficiency. *Commonwealth v. Cain*, 906 A.2d 1242, 1245 (Pa. Super. 2006); *see also Commonwealth v. Wilson*, 825 A.2d 710, 713-14 (Pa. Super. 2003) (a sufficiency review "does not include an assessment of the credibility of the testimony offered by the Commonwealth"). Thus, no relief is due.

### Weight of Evidence Regarding K.M.'s Age

Next, Santiago argues that the trial court erred by denying his post-sentence motion challenging the weight of the evidence establishing K.M.'s age at the time of the rape for purposes of his convictions of indecent assault, rape, and IDSI of a child. Each crime required the Commonwealth to prove that K.M. was under the age of thirteen. *See* 18 Pa.C.S. §§ 3126(a)(7), 3121(c), 3121(b). Santiago concedes that the evidence was sufficient to prove that K.M. was under the age of thirteen. Santiago's Brief at 29. Because he contends the evidence was "not ample" and lacked a "firm basis in time," he argues that it shocks one's sense of justice to convict him of crimes with age as an element, especially when the trial court did not devote "more care" to its review of the record when deciding this claim. *Id.* at 29-30. According to Santiago, the Commonwealth established only that the rape happened on

a day with sunshine either in the summer or on a weekend. *Id.* at 30. He emphasizes that the journal entry was undated and K.M. testified that she was "not clear of the age" when the rape happened. *Id.* (citing N.T., 2/15/2023, at 95).

When deciding whether the trial court abused its discretion in denying a claim for a new trial based upon a challenge to the weight of the evidence, we bear in mind that the "jury is the ultimate fact-finder and the sole arbiter of the credibility of each of the witnesses." *Commonwealth v. Clemons*, 200 A.3d 441, 464 (Pa. 2019). As such, the jury "is entitled to resolve any inconsistencies in the Commonwealth's evidence in the manner that it sees fit." *Id.*

> Trial judges, in reviewing a claim that the verdict is against the weight of the evidence[,] do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Commonwealth v. Widmer*, 744 A.2d 745, 752 (Pa. 2000) (citations and quotation marks omitted). The "trial court may award relief only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Clemons*, 200 A.3d at 463 (citations and quotation marks omitted).

Our inquiry differs on appeal:

When it considers a weight claim, an appellate court must review the trial court's exercise of discretion. A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. We do not contemplate the underlying question of whether the verdict actually was against the weight of the evidence. Rather, we evaluate the trial court's decision of that issue, and we do so under an abuse of discretion standard.

*Id.* at 463-64 (citations and quotation marks omitted).

In its opinion, the trial court noted the applicable standard of review and explained that it denied the claim because K.M. testified that she was under thirteen at the time of the incident. Trial Court Opinion, 12/18/2024, at 7.

A defendant must raise a claim that the verdict was against the weight of the evidence in a motion for a new trial or waiver will result. Pa.R.Crim.P.607(A), cmt. Santiago's post-sentence motion argued that the verdicts were against the weight of the evidence because K.M. had unidentified "inconsistencies in her trial, preliminary hearing testimony and [Child Advocacy Center] interviews" and "the timeline of events is inherently unreliable and contradictory[.]" Post-Sentence Motion, 8/7/2023, ¶ 4. The Commonwealth asserts that Santiago's post-sentence motion "did not adequately preserve this issue" because it failed to identify the alleged inconsistencies, let alone specify that he was referring to the victim's age. *See* Commonwealth's Brief at 18.

We do not find outright waiver here. Yet because we review only whether the trial court "palpably abused its discretion in ruling on the weight claim," **Commonwealth v. Weir**, 201 A.3d 163, 169 (Pa. Super. 2018), we consider only the argument as presented to the trial court. At best, we can align Santiago's argument on appeal with his preserved claim that there was conflict in K.M.'s testimony and unspecified unreliable contradictions in the timeline of events. The trial court cannot grant a new trial based upon mere testimonial conflict. **Clemons**, 200 A.3d at 464.

Even if we construe Santiago's motion for a new trial generously and presume the trial court understood that he was referring to K.M.'s age when referencing an unreliable timeline, the trial court acted within its discretion by concluding that the jury's verdict did not shock its sense of justice. The record reflects that when asked how old she was at the time of the incident, K.M. responded, "Either 11 or 12. I'm not very clear of the age." N.T., 2/15/2023, at 95. The prosecutor next asked if she knew if she had been under the age of thirteen and K.M. responded affirmatively. **Id.** No relief is due. **See Commonwealth v. Fuentes**, 272 A.3d 511, 517-19 (Pa. Super. 2022) (trial court did not abuse its discretion by deciding that jury's verdict did not shock its sense of justice based in part upon inconsistencies in child victim's testimony regarding her age at time of rape).

**Evidentiary Issues**

- 13 -

Santiago's next two arguments concern the trial court's admission of evidence at trial. "The admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion." *Commonwealth v. Ganjeh*, 300 A.3d 1082, 1091 (Pa. Super. 2023). An abuse of discretion is more than a mere error in judgment. *Id.* Rather, the trial court abuses its discretion when it overrides or misapplies the law or exercises its judgment in a manner that is manifestly unreasonable or that reflects bias, prejudice, ill-will, or partiality. *Id.* In general, "all relevant evidence, i.e., evidence which tends to make the existence or non-existence of a material fact more or less probable, is admissible." *Commonwealth v. Dillon*, 925 A.3d 131, 136 (Pa. 2007); *see also* Pa.R.E. 401, 402. "Although relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Pa.R.E. 403.

<u>Admission of Photographs</u>

In his first evidentiary issue, Santiago contends that the trial court abused its discretion by admitting the photographs taken by Dr. Elcock-Messam during her physical examination of K.M. Santiago argues that the photographs were inflammatory because any juror who viewed images of a child's vagina "would feel" the violation of the child's privacy and a reaction from being forced to view such images. Santiago's Brief at 21. Santiago

argues that the prejudice outweighed any probative value because the very "fact that a child was photographed in this sensitive area of her body, for whatever purpose" interfered with the jury's ability to assess guilt and innocence objectively. *Id.* According to Santiago, the public has no common knowledge of how this part of the female reproductive system looks. *Id.* As such, Santiago argues that it was Dr. Messam's testimony that had evidentiary value to the jury, not the photographs, and if a visual aid was needed, the Commonwealth could have used a diagram. *Id.*

Even if not inflammatory, Santiago asserts that the photographs were not relevant, because the depicted transection merely demonstrates that K.M. had a penetrating trauma at one point, not necessarily at the time K.M. says she was raped. *Id.* at 23. Furthermore, he maintains that the photographs were "clearly confusing and misleading" because neither counsel "after preparation and review of the photograph[s]" could "properly identify the hymen and the transection" in the photographs. *Id.* at 22, 24.

Our Supreme Court has explained:

A determination of whether photographic evidence alleged to be inflammatory is admissible involves a two-step analysis. First, the court must decide whether a photograph is inflammatory by its very nature. If the photograph is deemed inflammatory, the court must determine whether the essential evidentiary value of the photograph outweighs the likelihood that the photograph will improperly inflame the minds and passions of the jury. The availability of alternate testimonial evidence does not preclude the admission of allegedly inflammatory evidence.

*Commonwealth v. Sanchez*, 36 A.3d 24, 48-49 (Pa. 2011) (citations and quotation marks omitted).

In considering whether a photograph is admissible, courts consider whether the nature of photograph is "likely to inflame the passions of the viewer," *Commonwealth v. Schroth*, 388 A.2d 1034, 1037 (Pa. 1978), such that the feeling it invokes in the viewer "would tend to cloud the jury's objective assessment of the guilt or innocence of the defendant." *See Commonwealth v. Funk*, 29 A.3d 28, 33 (Pa. Super. 2011). This inquiry is made within the context of the crimes for which the defendant is on trial. *See Sanchez*, 36 A.3d at 49-50 (considering inflammatory nature of photographs "in the context of a murder trial"); *Commonwealth v. Brown*, 711 A.2d 444, 453 (Pa. 1998) (noting that photographs of child's tortured and decayed body were unpleasant but that one would expect them to be so "in a brutal sexual assault and murder of a small child").

In its opinion, the trial court found that the photographs were not inflammatory. Trial Court Opinion, 12/18/2024, at 5. Even assuming they were inflammatory, the trial court concluded that "the photographs taken by Dr. [Elcock-]Messam, especially in conjunction with Dr. [Elcock-]Messam's testimony illustrating [K.M.'s] hymen and the consistency with [K.M.'s] reports of extreme pain due to penetrating trauma, have essential evidentiary value" that outweighed any potential prejudicial impact. *Id.*

We have reviewed the three photographs in question and the accompanying testimony. The color photographs depict K.M.'s vulva, vagina, and hymen. *See* Commonwealth Exhibit C-3. Prior to any testimony, defense counsel objected to the Commonwealth's prospective admission of the photographs, arguing that the jury should not view actual photos of K.M.'s vagina taken when she was twelve,[3] proposing that Dr. Messam instead use a diagram to describe what she observed during the examination. N.T., 2/15/2023, at 16-17. In response, the prosecutor asserted that the photographs were necessary to show K.M.'s physical signs of trauma; the trial court ruled that the Commonwealth could introduce the photographs for that purpose. *Id.*

During the Commonwealth's case-in-chief, Dr. Elcock-Messam testified as an expert in child abuse pediatric medicine. *Id.* at 16. The doctor explained that a hymen is a membrane partially covering the vaginal opening. *Id.* at 35-36. During her examination of K.M.'s hymen, she observed a "transection," which is a "slit in the hymen." *Id.* at 36. A transection indicates that "something penetrated" K.M.'s vagina and created a "cut" that went "all the way down to the tissues" to which the hymen is attached. *Id.* at 23, 36-38. This "defect" in K.M.'s hymen reveals that there was "penetrating trauma"

---

[3] Dr. Elcock-Messam testified that the photographs were taken when K.M. was thirteen, not twelve. *See* N.T., 2/15/2023, at 37, 39, 42.

prior to the examination that may or may not have been sexual abuse. *Id.* at 38.

After the Commonwealth sought to admit the photographs, defense counsel renewed her objection and requested at sidebar that the trial court examine the actual photographs. *Id.* at 40. After examining the photographs and overruling the objection, the trial court permitted the Commonwealth to admit the photographs as Commonwealth Exhibit C-3. *Id.* at 40-41, 43.

Dr. Elcock-Messam authenticated the photographs as the ones she had taken during the examination. *Id.* at 43. While the photographs were displayed to the jury, the doctor pointed to the relevant places that corresponded with her testimony. *See, e.g., id.* at 47 (identifying the transection and testifying that its presence was how she "kn[e]w that there was penetrating trauma to the vagina"). After the prosecutor referred to the transection as "the scarring," Dr. Elcock-Messam clarified that a transection is a tear, not scarring. *Id.* at 48. She explained that the photograph showed a "complete transection of the hymen," which is indicative of a penetrating trauma that was both consistent with K.M.'s allegations against Santiago and K.M.'s testimony that she experienced pain while being raped. *Id.*

During cross-examination, defense counsel displayed the photographs again and asked Dr. Elcock-Messam if various aspects were "normal." *Id.* at 49. Except for the transection that indicated the occurrence of "significant trauma to this vagina," the doctor repeated that the remainder of K.M.'s

hymen was "normal" and had "healed." *Id.* at 49, 52. According to her testimony, a hymen heals relatively quickly—approximately ten days or more—yet the transection left behind "tells a story." *Id.* at 51, 58-59.

Upon viewing the photographs in question in conjunction with the testimony provided, we cannot conclude that the trial court abused its discretion. *See Ganjeh*, 300 A.3d at 1091. The photographs, which were taken in a clinical setting, depict only the area of the body in question. While society considers the vulva and vagina to be an intimate, private part of the body that is not regularly on display, there is nothing gruesome or shocking about the photographs. Approximately half of the human population possesses these very body parts. That the photographs were of a child may generate emotion in some people, but not unduly so compared to other evidence or testimony at a trial involving sexual crimes against a child.

Even if we deemed the photographs to have some inflammatory nature, we discern no abuse of discretion in the trial court's determination that it was outweighed by the photographs' essential evidentiary value. The photographs were relevant, as they furnished the basis for Dr. Elcock-Messam's testimony that she observed a physical indication of penetration trauma present two months after K.M. turned thirteen years old that was consistent with K.M.'s allegations that Santiago had penetrated her vagina with his penis and caused her pain. Although it did not conclusively establish the timing, the method, or the perpetrator of the penetration trauma, it contributed to making each of

these things more probable than not. Dr. Elcock-Messam's use of the photographs during her testimony did the opposite of confuse the jury; it clarified and illustrated her findings. That Dr. Elcock-Messam may have been able to describe her findings without the photographs or with a diagram does not preclude their admission. **See Sanchez**, 36 A.3d at 49.

Trial courts are not required to "sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand[.]" **Commonwealth v. Santiago-Burgos**, 314 A.3d 535, 544 (Pa. Super. 2024). The trial court did not abuse its discretion by ruling that the Commonwealth was entitled to introduce the photographs to sustain its burden and that the probative value of the photographs outweighed the likelihood that the photographs would inflame the juror's passions to the extent they could no longer be objective.

Cumulative Effect of Leading Questions, Hearsay, and Reading from
Transcripts

In his next evidentiary issue, Santiago combines three alleged errors into one, arguing that the cumulative effect of the three abuses of the trial court's discretion was prejudicial to Santiago and deprived him of a fair trial. Santiago's Brief at 31-35. The first alleged error was allowing the prosecutor to lead K.M. regarding disputed core elements of the most serious charges against Santiago in contravention of Pa.R.E. 611(c), including that K.M. knew Santiago, how she knew him, when she reported the assault, and her age. **Id.** at 31-32. The second was allowing Dr. Elcock-Messam to relay hearsay

statement K.M. made during the doctor's examination; Santiago asserts that Rule 803(4) only permits statements made during medical examinations, not examinations for purposes of investigation. *Id.* at 33. The third was allowing Officer Jones and A.C. to read from transcripts of K.M.'s and A.C.'s police interviews without an independent recollection of evidence as opposed to using the transcripts to refresh the recollection of the witnesses. *Id.* at 34-35. According to Santiago, "the cumulative nature" of the Commonwealth's "use of inadmissible evidence" has a "chilling quality" that prevents the Commonwealth from establishing that the multiple erroneous rulings did not contribute to Santiago's conviction beyond a reasonable doubt. *Id.* at 35.

Although Santiago frames his issue in terms of the cumulative effect of all three alleged errors, he still must establish that each individual evidentiary ruling constituted an abuse of the trial court's discretion before we may consider their cumulative impact. This he has failed to do.

We begin with his first claim concerning the prosecutor's use of leading questions during K.M.'s testimony. "A leading question is one which puts the desired answer in the mouth of the witness." *Commonwealth v. Chambers*, 599 A.2d 630, 640 (Pa. 1991). Our evidentiary rules instruct that counsel generally should not use leading questions on direct examination of a non-hostile witness "except as necessary to develop the witness's testimony." Pa.R.E. 611(c). Our Supreme Court has long held that a trial court has a "large measure of discretion" to construe the prohibition against leading

questions liberally and "to permit parties to elicit any material truth" from any witness that is "to be exercised in the interests of justice and a fair trial under the circumstances as they arise." **Chambers**, 599 A.2d at 640 (holding trial court did not abuse its discretion by allowing prosecutor to lead fourteen-year-old witness based upon age and need to steer witness around prejudicial and extraneous references to defendant's alleged involvement in another crime); **see also** Pa.R.E. 611(a) (instructing trial courts to "exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to: (1) make those procedures effective for determining the truth; (2) avoid wasting time; and (3) protect witnesses from harassment or undue embarrassment") (formatting altered).

Our review of the record finds no support for Santiago's assertion that the Commonwealth led K.M. on the core elements of the most serious offenses against him. Instead, it reflects that K.M. readily responded to open-ended questions querying when, where, and how the rape and other crimes occurred. **See generally** N.T., 2/15/2023, at 94-131. Near the beginning of her testimony, the prosecutor asked K.M. a trio of leading questions to set the stage as to her familiarity with Santiago and why they were in court. **See id.** at 90 ("And you're familiar with him because he was your sister's boyfriend, is that correct?"; "And that's [B.C.'s] boyfriend?"; "And you are here today because of something that happened with you and [Santiago], is that correct?"). Defense counsel objected to the last question and to the

prosecutor's use of leading questions in general. ***Id.*** at 91. This led the trial court to caution the prosecutor that it would sustain objections to leading questions that strayed too far from non-disputed preliminary inquiries, but it allowed her to ask K.M. the last question again and K.M. repeated yes. ***See id.*** at 91-92. Defense counsel did not raise any additional leading objections for the remainder of K.M.'s questioning by the Commonwealth.

We discern no abuse of discretion in the trial court's tolerance of some leading questions during the direct examination of a seventeen-year-old about a traumatic experience that happened approximately five years prior. The objected to questions were preliminary questions that set the stage for K.M. to tell her story of what happened. To the extent Santiago contends other questions posed were leading, counsel's failure to raise a contemporaneous objection at trial waives the issue for appeal. ***See Commonwealth v. Thoeun Tha***, 64 A.3d 704, 713 (Pa. Super. 2013); Pa.R.A.P. 302(a).

We likewise find no violation of Rule 803(4). Rule 803 lists exceptions to the general rule that out of court statements provided for the truth of the matter asserted are excludable as hearsay, one of which is commonly known as the medical treatment exception. ***See*** Pa.R.E. 803(a)(4). This exception requires that "(1) the statement must be made for the purpose of receiving medical treatment; and (2) the statement must be necessary and proper for diagnosis and treatment." ***Commonwealth v. Belknap***, 105 A.3d 7, 11 (Pa. Super. 2014); ***see also*** Pa.R.E. 803(4).

The record reflects that the prosecutor asked Dr. Elcock-Messam what information K.M. provided that informed the doctor's examination, and defense counsel lodged a hearsay objection. N.T., 2/15/2023, at 27. The trial court permitted Dr. Elcock-Messam to respond because the question was targeted towards statements pertinent to diagnosis and treatment. *Id.* Santiago claims in his brief that the "entirety of K.M.'s statement as revealed by Dr. [Elcock-]Messam was not related to treatment," but does not identify which portions were objectionable or cite to any authority beyond the rule. *See* Santiago's Brief at 33. Santiago references objectionable testimony on pages twenty-five to twenty-seven of the notes of testimony, but that testimony concerned statements by K.M.'s mother to which Dr. Elcock-Messam did not testify to in detail. *See id.*; N.T., 2/15/2023, at 25-27. Furthermore, the statements to which Dr. Elcock-Messam testified were also contained in her report, which the Commonwealth had already admitted into evidence without objection as Exhibit C-2. *See* N.T., 2/15/2023, at 23. Based upon the argument presented on appeal, we discern no abuse of the trial court's discretion in overruling defense counsel's hearsay objection.

Santiago's last evidentiary objection alleges that the trial court permitted the substitution of written documents for a witness' own recollection. First, after Officer Jones could not recall if B.C. was present during the officer's first interview with the family in 2019, the prosecutor showed her a transcript from the recorded interview to refresh her

recollection. ***See id.*** at 206-07. Defense counsel's objection was overruled.

***Id.*** We discern no abuse of discretion in the trial court's decision to permit

the officer to review the transcript from the interview to refresh her

recollection. ***See*** Pa.R.E. 612(a) ("A witness may use a writing or other item

to refresh memory for the purpose of testifying while testifying, or before

testifying.").

The prosecutor also showed A.C. a transcript of her interview with

Officer Jones during redirect examination. In contrast to the questioning of

Officer Jones, the prosecutor spent several pages asking A.C. to testify what

she had answered at the interview as reflected in the transcript. ***See*** N.T.

2/15/2023, at 282-88. Even assuming, without deciding, that this was

improper, Santiago essentially concedes that this error, standing alone, would

not entitle him to a new trial. ***See*** Santiago's Brief at 31, 35. We agree.

None of the evidentiary errors alleged by Santiago constitute an abuse

of the trial court's discretion. As such, no relief is due.

**Discretionary Aspects of Sentencing**

In his final issue, Santiago argues that the trial court abused its

discretion by imposing a clearly unreasonable and excessive sentence of

twenty-five to fifty years of incarceration. Santiago's Brief at 37-39. Santiago

claims the trial court: (1) imposed the sentence without adequately

considering the factors delineated in section 9721 of the Sentencing Code,

including the protection of the public and his rehabilitative needs; (2)

"completely ignored" his lack of criminal history; and (3) "doubled counted" K.M.'s young age as a factor even though her age was an element of rape of a child and IDSI of a child that the minimum sentence and guidelines already took into account. Santiago's Brief at 37-39. Santiago asks this Court to vacate his sentence to direct the trial court to re-sentence him with consideration of section 9721's sentencing factors and without consideration of the age of the victim. *Id.* at 38.

Because the right to appellate review of the discretionary aspects of sentence is not absolute, an appellant must petition this Court for permission to appeal. ***Commonwealth v. Davis***, 341 A.3d 808, 812-13 (Pa. Super. 2025).

> To invoke this Court's jurisdiction when challenging the discretionary aspects of a sentence, an appellant must satisfy a four-part test: (1) the appellant preserved the issue by raising it at the time of sentencing or in a post-sentence motion; (2) the appellant filed a timely notice of appeal; (3) the appellant set forth in his brief a concise statement of reasons relied upon for the allowance of his appeal pursuant to Pennsylvania Rule of Appellate Procedure 2119(f); and (4) the appellant raises a substantial question for review.

*Id.* (citations and quotation marks omitted). A substantial question is determined on a case-by-case basis and "exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing

- 26 -

process." ***Commonwealth v. McCain***, 176 A.3d 236, 240 (Pa. Super. 2017) (citation omitted).

Santiago timely filed his appeal and preserved his challenges at the sentencing hearing and in his post-sentence motion. ***See*** N.T., 7/23/2023, at 11-15 (arguing, inter alia, that the court cannot count age and restraint as aggravating factors because the offenses include both as elements); Post-Sentence Motion, 8/8/2023, ¶¶ 2-3 (arguing that trial court focused exclusively on retribution and punishment in lieu of all section 9721 factors, imposed an excessive sentence based upon impermissible factors, and failed to consider Santiago's background, character, and rehabilitative needs). He also included a Pa.R.A.P. 2119(f) statement in his brief and raises two substantial questions: one based upon an allegedly excessive sentence imposed without consideration of the section 9721 factors, and the other claiming the trial court double counted a factor already accounted for in the sentencing guidelines. Santiago's Brief at 19; ***see Commonwealth v. Dodge***, 77 A.3d 1263, 1273 (Pa. Super. 2013); ***Commonwealth v. Goggins***, 748 A.2d 721, 728 (Pa. Super. 2000) (en banc).[4] Accordingly, we review his challenges.

---

[4] Santiago included the double-counting argument only in his argument and not his 2119(f) statement. The Commonwealth, however, did not object. ***See*** Commonwealth's Brief at 34. In the absence of an objection by the Commonwealth, this Court may exercise our discretion to accept this claim for appellate review despite the lack of strict compliance with Rule 2119(f). *(Footnote Continued Next Page)*

We review challenges to the discretionary aspects of sentencing pursuant to the following standard:

> Sentencing is a matter vested in the sound discretion of a sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error of judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Baker*, 311 A.3d 12, 19 (Pa. Super. 2024) (citation omitted).

We must affirm a sentence that falls within the sentencing guidelines unless "the case involves circumstances where the application of the guidelines would be clearly unreasonable." 42 Pa.C.S. § 9781(c)(2). When conducting this inquiry, the General Assembly has delineated four factors that this Court must consider: (1) the "nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the "opportunity of the sentencing court to observe the defendant, including any presentence investigation"; (3) the "findings upon which the sentence was based"; and (4) the "guidelines promulgated by the commission." *Id.* § 9781(d). A sentence also may be unreasonable if the sentencing court imposes it "without express or implicit consideration … of the general standards applicable to sentencing

---

*Commonwealth v. Shugars*, 895 A.2d 1270, 1274 (Pa. Super. 2006). We elect to do so here.

found in [s]ection 9721." ***Commonwealth v. Walls***, 926 A.2d 957, 964 (Pa. 2007). Section 9721 requires the sentencing court to consider "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b). "The balancing of these [s]ection 9721(b) sentencing factors is within the sole province of the sentencing court." ***Baker***, 311 A.3d at 19. If the trial court has the benefit of a presentence investigation ("PSI") report, we presume that the court was aware of all appropriate sentencing factors and considerations and weighed them in a meaningful fashion. ***Devers***, 546 A.2d at 18.

The trial court may impose a sentence of total confinement when, with regard to "the nature and circumstances of the crime and the history, character, and condition of the defendant," it determines total confinement is necessary because there is undue risk the defendant will commit another crime if it imposes a lesser restriction, the defendant needs correctional treatment that an institution can provide most effectively, or a lesser sentence will depreciate the seriousness of the crime. ***See*** 42 Pa.C.S. §§ 9721(b), 9725. Finally, the trial court must consider the sentencing guidelines when fashioning its sentence. ***Id.*** § 9721(b). These guidelines, however, "are purely advisory in nature—they are not mandatory." ***Baker***, 311 A.3d at 19. Regardless of whether the sentence is above or below the guideline ranges,

given our standard of review, appellate rejection of a sentence on unreasonableness grounds will "occur infrequently." **Walls**, 926 A.2d at 964.

In the instant case, the trial court offered the following justification of its sentence at the sentencing hearing:

> The [c]ourt has considered and has taken note of as indicated all the comments by defense counsel, by the witnesses presented by the Commonwealth, the Commonwealth's arguments, the sentencing guidelines, and indeed was the trial judge in this case. The [c]ourt is taking the following factors into consideration when imposing sentence. First of all, [] Santiago does have a zero prior record score, so it's not that he's a career criminal. This was a criminally aggressive act, sexual act, but he has no prior record. The [c]ourt is also taking into account that the victim in this case was 12 years old at the time, a vulnerable child in this case during this criminal sexual assault where the young victim was penetrated vaginally and anally and threatened not to tell anybody about the assault. The [c]ourt also notes that there was physical injury in this case, and the terror and stress it caused the minor victim in this case. The [c]ourt when imposing a sentence pursuant to the Pennsylvania sentencing statute has to consider three specific factors. One, the protection of the public. This case involves a guilty verdict returned on all counts, six felonies,[5] one misdemeanor. The gravity of the offense and the impact on the victim and community. I just heard from family members, the impact it's had on the family, on this young victim, which will last a very, very long time if not [her] entire lifetime. The entire community is affected by these types of violent sexual assaults. Everyone feels less safe. The victim, of course, is terrorized but the entire community feels less safe in these type of sexual assaults which occur in the community. It's a danger to their families. The rehabilitative needs of [Santiago] are also a factor, and the only facility that can safely house [Santiago] and provide the programming is really in a state facility, SCI. That's the only place that can really deal with these issues.

---

[5] The trial court misspoke. The record reflects that the jury returned a guilty verdict on five felonies and one misdemeanor, which is consistent with the sentence the trial court imposed.

N.T., 7/23/2023, at 17-19.

Santiago's claim that the trial court failed to consider his rehabilitative needs and ignored his lack of criminal history is belied by the record. Not only was the trial court informed by a PSI report, but it stated that it considered his rehabilitative needs and determined that a state correctional institution was the only place that could meet these needs while also serving to protect the public. It is apparent that the trial court considered the section 9721 factors but balanced them in a way that did not benefit Santiago. This Court cannot and will not invade the trial court's domain to upset its discretion in this fashion. *See Walls*, 926 A.2d at 964; *Baker*, 311 A.3d at 19. The court also expressly took his lack of criminal record into account, which it balanced with the aggressiveness of the criminal act at issue.

As for double counting factors, Santiago is correct that "a sentencing court may not 'double count' factors already taken into account in the sentencing guidelines." *Goggins*, 748 A.2d at 732. While courts cannot use a factor already included within the sentencing guidelines as the sole reason for increasing or decreasing a sentence to the aggravated or mitigated range, it may "use information included in the guidelines to supplement other peripheral sentencing information." *Commonwealth v. Watson*, 228 A.3d 928, 937 (Pa. Super. 2020).

Simply mentioning K.M.'s specific age in its list of factors the trial court considered does not mean that it double counted this factor when fashioning

his sentence. *See Walls*, 926 A.2d at 967 (stating that sentencing court could consider the precise age of the victim because it was not an element of rape and IDSI of a victim less than thirteen years of age and the court considered the victim's specific age in conjunction with the grandparent/abuser's breach of grandchild's trust and his failure to take responsibility). The trial court's sentences for rape and IDSI of a child under thirteen were within the guidelines. *See* 18 Pa.C.S. §§ 3121(e), 3123(d)(1) (for rape and IDSI of a child who is less than thirteen years of age, court shall sentence to term of imprisonment, which cannot exceed forty years); 204 Pa.Code §§ 303.15, 303.16(a) (recommending a sentence of seventy-two months to statutory limit for offense gravity score of fourteen with prior record score of zero). This differs significantly from *Goggins*, where the trial court deviated from a mandatory minimum sentence and the sentencing guidelines to impose a sentence well beyond the aggravated range. *Goggins*, 748 A.2d at 732.

Upon review of the trial court's comments as a whole and the considerations outlined in section 9781(d), we discern no abuse of discretion in the trial court's mention of K.M.'s specific age in connection with the physical injury, terror, and stress K.M. experienced during the incident and its aftermath. As the trial court had the benefit of a PSI and considered and weighed the requisite factors in fashioning Santiago's sentence, we conclude that his claims merit no relief.

**Legality of Sentence**

As a final matter, we address sua sponte the legality of Santiago's sentence, as the trial court failed to impose the mandatory term of probation required by SORNA. The statute provides, in relevant part, the following:

> **(a) Mandatory probation supervision after release from confinement.**--A person who is convicted in a court of this Commonwealth of an offense under section 9799.14(d) (relating to sexual offenses and tier system) **shall** be sentenced to a **mandatory period of probation of three years consecutive to and in addition to** any other lawful sentence issued by the court.
>
> **(b) Imposition.**--The court may impose the term of probation required under subsection (a) in addition to the maximum sentence permitted for the offense for which the defendant was convicted.
>
> **(c) Authority of court in sentencing.**--There shall be **no authority** in a court to impose on an offender to which this section is applicable **a lesser period of probation than provided for under subsection (a)**. Sentencing guidelines promulgated by the Pennsylvania Commission on Sentencing shall not supersede the mandatory period of probation provided under this section.

42 Pa.C.S. § 9718.5 (emphasis added).

By the express terms of section 9718.5, the consecutive three-year probationary sentence for a Tier III sexual offense is mandatory. *See* 42 Pa.C.S. § 9718.5(a), (c). Five of Santiago's six convictions were for crimes that section 9799.14(d) classifies as Tier III offenses: two counts of rape, two counts of IDSI, and one count of indecent assault of person under thirteen. 42 Pa.C.S. § 9799.14(d)(2), (4), (8); *see also* 18 Pa.C.S. §§ 3121(a)(1), (c), 3123(a)(1), (b), 3126(a)(7). The only probationary term he received was for

corruption of minors, which is a non-tiered offense when charged as a misdemeanor.

A trial court is imbued with discretion to determine the sentence to impose within the confines of the authority provided to it by the General Assembly. *See* 42 Pa.C.S. § 9703. "When a trial court imposes a sentence outside of the legal parameters prescribed by the applicable statute, the sentence is illegal and should be remanded for correction." *Commonwealth v. Vasquez*, 744 A.2d 1280, 1284 (Pa. 2000). When a statute provides for a mandatory penalty, a "sentencing court loses its authority to exercise discretion." *Commonwealth v. Prinkey*, 277 A.3d 554, 564 (Pa. 2022) (citation omitted). A sentence that fails to include a mandatory penalty is illegal from its inception. *Vasquez*, 744 A.2d at 1284. On direct appeal, an appellate court may raise and address issues concerning illegal sentences sua sponte, regardless of whether a party preserved an issue in the lower courts or raised it on appeal. *Commonwealth v. Hill*, 238 A.3d 399, 410 n.11 (Pa. 2020); *see also Vasquez*, 744 A.2d at 1284 (holding that this Court did not err by sua sponte identifying illegal sentence on direct appeal and remanding for imposition of mandatory fine, even though the Commonwealth did not

preserve or raise the issue, when the statutory requirements for imposition of penalty were satisfied).[6]

Because section 9718.5 circumscribes the trial court's discretion in sentencing a defendant convicted of the enumerated tiered offenses, the trial court lacked authority to forgo imposing the mandatory consecutive probationary term, rendering Santiago's sentence illegal. As such, we vacate Santiago's sentence and remand for imposition of a sentence that complies with section 9718.5.[7] Because Santiago's sentences are interdependent, we

_____

[6] Double jeopardy principles do not prevent a court from correcting and increasing an illegal sentence, even if a defendant has started serving the sentence. **Commonwealth v. Jones**, 554 A.2d 50, 52 (Pa. 1989). This is because a defendant has no legitimate expectation of finality in a sentence when it, or the conviction upon which it was imposed, is challenged on appeal. **Commonwealth v. Kunish**, 602 A.2d 849, 853 (Pa. 1992).

[7] As noted, the trial court determined that Santiago's indecent assault conviction merged with the other crimes for sentencing purposes, leaving four qualifying Tier-III convictions. As stated above, section 9718.5 requires "[a] person who is convicted in a court of this Commonwealth of an offense" classified as Tier III to be sentenced to a consecutive term of probation in addition to any lawful sentence. As a panel of this Court recently observed, section 9718.5 "does not expressly require that a defendant with multiple Tier III convictions receive separate, consecutive periods of probation after release from confinement," and no cases have interpreted section 9718.5 to have such a requirement. **Commonwealth v. Kramer**, ___ A.3d ___, 2025 WL 3674785, at *6 (Pa. Super. 2025). In fact, although the General Assembly added section 9718.5 in 2018, our independent research has not uncovered any cases other than **Kramer** that even comments upon the statutory language to determine how it applies to an offender with multiple Tier III convictions.

In **Kramer**, the trial court originally imposed a single three-year period of probation consecutive to confinement. **Id.** at *6. While Kramer's direct appeal was pending before this Court, the trial court entered a "corrected"
*(Footnote Continued Next Page)*

- 35 -

vacate the entire judgment of sentence. ***See Commonwealth v. Goldhammer***, 517 A.2d 1280, 1283 (Pa. 1986).

## Conclusion

Upon review of the five issues presented by Santiago, we conclude that: (1) the Commonwealth sufficiently established that Santiago was eighteen years of age or above to support his conviction of corruption of minors; (2) the trial court did not abuse its discretion by denying Santiago's post-sentence

---

sentencing order wherein it, inter alia, purported to replace the single three-year probationary term with fifteen years of consecutive probation because Kramer was convicted of five Tier III crimes. ***Id.*** Kramer filed an application seeking relief from this Court, claiming the trial court lacked jurisdiction to amend its order nearly three years after it originally imposed the sentence. ***Id.*** Without conducting a statutory analysis other than observing the lack of an express requirement to impose separate terms of probation for multiple convictions, this Court agreed with the trial court's assessment that five three-year terms "was warranted pursuant to [s]ection 9718.5." ***Id.*** Nevertheless, it concluded that, because the statute does not expressly require multiple consecutive terms, the trial court's failure to impose multiple probationary terms did not constitute a "patent and obvious error" such that the trial court possessed the authority to change the original sentencing order more than thirty days after its entry. ***Id.*** As a result, we vacated the judgment of sentence and remanded for imposition of the original single term. ***Id.***

***Kramer*** addressed the question of how a trial court must apply section 9718.5 to an offender with multiple Tier III convictions in a unique procedural posture; as such, it remains an open legal question. Without advocacy, we decline at this juncture to decide whether section 9718.5 requires or permits Santiago to receive (1) a single three-year term of probation consecutive to all carceral portions of his sentence; (2) four three-year terms of probation consecutive to all carceral portions of his sentence and concurrent to each other; or (3) four three-year terms of probation consecutive to all carceral portions of his sentence and consecutive to each other. We leave that issue for the trial court to decide upon remand after receiving advocacy from the parties.

motion based upon the weight of the evidence supporting the jury's finding that K.M. was less than thirteen years of age at the time of the rape, IDSI, and indecent assault; (3) the trial court did not abuse its discretion by admitting photographs depicting the transection of K.M.'s hymen because they were not inflammatory in the context of this trial for sexual crimes against a twelve-year-old girl and, alternatively, were of essential evidentiary value that outweighed any inflammation of the jury's minds and passions; (4) the claimed evidentiary errors did not constitute a collective abuse of discretion; and (5) the trial court's sentencing decision did not constitute an abuse of discretion.  Because Santiago's sentence does not include the mandatory probation required by SORNA, however, we vacate his sentence and remand for resentencing in accordance with this decision.

Convictions affirmed.  Judgment of sentence vacated.  Case remanded. Jurisdiction relinquished.

Judge Bowes joins the memorandum.

Judge Nichols concurs in the result.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/6/2026