J-A30023-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAYSON CASTILLO | : | |
| | : | |
| Appellant | : | No. 2955 EDA 2024 |

Appeal from the Judgment of Sentence Entered October 2, 2024
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0007107-2023

BEFORE: LAZARUS, P.J., PANELLA, P.J.E., and SULLIVAN, J.

MEMORANDUM BY PANELLA, P.J.E.:          **FILED FEBRUARY 12, 2026**

Jayson Castillo appeals from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County for his convictions of third degree murder (18 Pa.C.S.A. § 2502(c)), conspiracy to commit third degree murder (18 Pa.C.S.A. § 903), and firearms not to be carried without a license (18 Pa.C.S.A. § 6106). Castillo raises issues regarding his request to replace plea counsel, his guilty plea, and sentencing. After careful review, we affirm.

The trial court set forth the procedural and factual history.

On June 7, 2023, the Defendant, Jayson Castillo, was arrested and charged with Murder and related offenses. On May 15, 2024, [Castillo] entered an open guilty plea to Third Degree Murder, Conspiracy to Commit Third Degree Murder, and Firearms not to be Carried Without a License ("VUFA 6106"). Sentencing was deferred for pre-sentence investigation [("PSI")] and mental health reports.

At his May 15, 2024, plea hearing, [Castillo] admitted that on May 19, 2023, he escorted and held forty-three-year-old Adinson Suarez-Martes while an unknown co-conspirator shot and killed

him at 3069 Kensington Avenue in Philadelphia, the location of La Potensia barbershop. These facts were buttressed by surveillance video footage, which shows [Castillo] on a motorbike, along with Ricardo Agostino on a quad four-wheeler, and five other males, pull up to the barbershop, enter the storefront, and run from the property shortly after. [Castillo] admitted these facts as well through a Spanish language interpreter. N.T. 5/15/2024 at 11-12.[FN3]

> FN3: At the close of the Commonwealth's recitation of the facts of the case, the Commonwealth made a correction on the record, clarifying his earlier statement that [Castillo] was believed to be the shooter. N.T. 05/15/2024 at 1[3-15].

A witness, D.P, who knows [Castillo], saw [Castillo] and the decedent get into an argument earlier that same day. During the argument, [Castillo] pulled out a handgun and the decedent fled. The witness was shown the surveillance video by police and identified [Castillo] as the individual on the motorbike who entered the barbershop and was one of the last ones to run out after the shooting. N.T. 5/15/2024 at 11-12.

The decedent suffered seven perforating gunshot wounds, including one to the left side of his chest, one to the right side of his chest, two others to his torso, one to his right arm, one to his right hand, and one to his left arm. The medical examiner determined that the cause of death was multiple gunshot wounds, and the manner of death was homicide. N.T. 5/15/2024 at 13.

At sentencing, on August 23, 2024, [Castillo] expressed, through an interpreter, that he wished to withdraw his open guilty plea and enter into a negotiated guilty plea with a certain term of imprisonment. The Commonwealth proposed an offer of thirty-five to seventy years of incarceration in exchange for a guilty plea to Third Degree Murder. [Castillo] responded, "I am not going to accept that." Th[e trial c]ourt confirmed that [Castillo] still wished to be sentenced, to which he responded, "Yes, but I am not going to take that. It's too many years." N.T. 8/23/2024 at 6-8.

After a recess, in which [Castillo] was permitted to consult with his attorney, counsel represented that [Castillo] wished to make an oral motion to withdraw his plea. Th[e trial c]ourt promptly held a hearing on the matter. Counsel explained that [Castillo]

thought that counsel was ineffective and that he wanted to withdraw his plea based on ineffective assistance of counsel. [Castillo] stated that counsel had come to visit him only three times, including once prior to sentencing, but in none of those visits did counsel "study the case" with him or review the videos together. [Castillo] expressed that, "[i]t's too many years for me. I [h]aven't killed anyone . . . I've never accepted that I committed the crime." At no time in his prior meetings with counsel did [Castillo] express an interest in withdrawing his plea. N.T. 08/23/2024 at 8-11, 14.

[Immediately thereafter, the court denied Castillo's motion to withdraw his guilty plea. *See id.* at 18.] If [Castillo] was permitted to withdraw his guilty plea, the Commonwealth would suffer prejudice in the form of renewed and increased trauma for the victim's family, given that they were led to believe that [Castillo] had accepted responsibility, as well as difficulty preparing for trial given that over a year had passed since the incident. N.T. 8/23/2024 at 17-18.

[The trial c]ourt sentenced [Castillo] to twenty to forty years of imprisonment for Third Degree Murder, a concurrent five to ten years of imprisonment for Conspiracy, and a concurrent one to two years of imprisonment for VUFA 6106, for an aggregate sentence of twenty to forty years of imprisonment.

On August 29, 2024, [Castillo] filed a timely Motion to Reconsider Sentence. On September 2, 2024, new counsel entered her appearance and filed a motion renewing [Castillo's] request to Withdraw his Plea. On October 2, 2024, [at a post-sentence motions hearing, Castillo moved for the trial court to reconsider allowing him to withdraw his guilty plea on the basis of irreconcilable differences with counsel and that his plea was not knowing and intelligent. Castillo failed to present any evidence of irreconcilable differences nor any additional evidence to support his assertion of innocence. The trial c]ourt denied [Castillo's] Motion to Withdraw his Plea and granted his Motion to Reconsider his Sentence, modifying the sentence for Third Degree Murder to seventeen-and-one-half to forty years of imprisonment.[FN2] All other aspects of his sentence remained unchanged. [Castillo] filed a timely Notice of Appeal on October 30, 2024, and a Concise Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P. 1925(b) on November 25, 2024. [***See*** Pa.R.A.P.

1925(b). The court filed a Rule 1925(a) opinion on December 20, 2024. *See* Pa.R.A.P. 1925(a).]

> FN2: At his initial sentencing, th[e trial c]ourt incorrectly calculated the guideline range using the Deadly Weapon Used Enhancement, which indicated a standard range of ninety to the statutory limit [+]/- 12 months of incarceration. At [Castillo's] hearing on October 2, 2024, th[e trial c]ourt acknowledged the correct range and modified his sentence to seventeen-and-one-half to forty years of incarceration. N.T. 10/2/2024 at 38.

Trial Court Opinion, 12/20/24, at 1-4 (first footnote omitted; paragraphs reordered).

On appeal, Castillo raises four issues.

1. Did the lower court err when it denied [Castillo's] request to remove trial counsel due to ineffectiveness?

2. Did the lower court abuse its discretion when it improperly denied [Castillo's] request to withdraw his guilty plea where [Castillo] had a colorable claim of innocence, the plea was not knowing, intelligent and voluntary, and counsel was ineffective.

3. Did the lower court abuse its discretion where at sentencing it improperly factored a prior allegation that did not result in arrest or conviction as a conviction?

4. Did the lower court abuse its discretion when it imposed a sentence of 17.5-40 years aggregate incarceration because the sentence was excessive, more than necessary to protect the public, punish [Castillo], and rehabilitate [Castillo]?

Appellant's Brief, at 6.

For his first issue, Castillo argues that, at the sentencing hearing, he sought to change counsel based on his plea counsel's ineffectiveness and the trial court failed to inquire into whether Castillo's dissatisfaction with his plea

counsel constituted irreconcilable differences. *See* Appellant's Brief, at 21-23. The Commonwealth argues that Castillo waived this claim because he never made a motion to change his court appointed counsel. *See* Appellee's Brief, at 12. Further, the Commonwealth argues Castillo failed to establish that there were irreconcilable differences that precluded effective representation. *See id.* at 13.

"A motion for change of counsel by a defendant to whom counsel has been assigned shall not be granted except for substantial reasons." Pa.R.Crim.P. 122(C)(2). "To satisfy this standard, a defendant must demonstrate that he has an irreconcilable difference with counsel that precludes counsel from representing him." *Commonwealth v. Keaton*, 45 A.3d 1050, 1070 (Pa. 2012) (citation omitted). "Whether a motion for change of counsel should be granted is within the sound discretion of the trial court and will not be disturbed on appeal absent abuse of discretion." *Commonwealth v. Cook*, 952 A.2d 594, 617 (Pa. 2008) (citations omitted). "We have held that a strained relationship with counsel, a difference of opinion in trial strategy, a lack of confidence in counsel's ability, or brevity of pretrial communications do not necessarily establish irreconcilable differences." *Commonwealth v. Ganjeh*, 300 A.3d 1082, 1092 (Pa. Super. 2023) (citation omitted).

Further:

This Court has set forth the following factors to consider on appeal from a trial court's ruling on a continuance motion to obtain

private representation: (1) whether the court conducted an extensive inquiry into the underlying causes of defendant's dissatisfaction with current counsel; (2) whether the defendant's dissatisfaction with current counsel constituted irreconcilable differences; (3) the number of prior continuances; (4) the timing of the motion for continuance; (5) whether private counsel had actually been retained; and (6) the readiness of private counsel to proceed in a reasonable amount of time.

*Commonwealth v. Lapaglia*, 320 A.3d 745, 754-55 (Pa. Super. 2024) (citation omitted).

The trial court explained its decision not to allow Castillo to seek new counsel.

Th[e trial c]ourt finds the timing of [Castillo's] assertion of ineffectiveness dubious at best. On August 23, 2024, the date of sentencing, [Castillo] initially asked th[e trial c]ourt to allow him to change his plea from an open guilty plea to a negotiated one with a definite term of incarceration. N.T. 08/23/2024 at 6. It was only after the Commonwealth conveyed an offer of thirty-five to seventy years of incarceration that [Castillo], for the first time, alleged that counsel was ineffective and that he wished to withdraw his plea based on ineffectiveness. N.T. 08/23/2024 at 8-10. In explaining his request, [Castillo] claimed that "[i]t's too many years for me. I haven't killed anyone." N.T. 8/23/2024 at 10-11.

While failing to meet with a defendant can constitute ineffectiveness of counsel, *see* [*Commonwealth v.*] *Brooks*, [839 A.2d 245 (Pa. 2003)], here [Castillo] acknowledged that trial counsel came to meet with him on three separate occasions, including on April 4, 2024, on the date of his plea on May 15, 2024, and once roughly one week before sentencing, each time with an interpreter. On May 15, 2024, after hearing the facts of the case, this Court verified that [Castillo] was pleading guilty because he "agreed and []helped someone else shoot the victim." N.T. 5/15/2024 at 14. Beyond a bare assertion of irreconcilable differences, which was made for the first time at his October 3, 2024, [post-sentence motion] hearing, [Castillo] presented no specific evidence of said differences. This Court finds that counsel was effective in meeting with [Castillo] multiple times, including

- 6 -

twice prior to his plea and once more prior to sentencing, each time with an interpreter, passing all discovery to [Castillo], and advising him on the consequences of his guilty plea.

Trial Court Opinion, 12/20/24, at 7.

Based on our review of the record, we discern no abuse of discretion. Castillo was dissatisfied with the length of his potential sentence and that counsel had met with him only three times. *See* N.T., 8/23/24, at 8-10. At most, Castillo only expressed a generalized dissatisfaction with counsel, which is insufficient. *See Ganjeh*, 300 A.3d at 1092; *Commonwealth v. Ingram*, 591 A.2d 734, 738 (Pa. Super. 1991) (holding that a defendant on the eve of trial who merely expressed his dissatisfaction with trial counsel but was unable to specify counsel's deficiencies failed to provide substantial reasons for the assignment of new counsel). Additionally, we agree with the Commonwealth that Castillo never sought to replace counsel at the sentencing hearing. Instead, he sought to withdraw his plea agreement on the basis of counsel's supposed ineffectiveness and his claim of innocence. *See* N.T., 8/23/24, at 18. Therefore, the trial court did not abuse its discretion.

In his second issue, Castillo argues that he presented a fair and just reason to withdraw his guilty plea prior to sentencing by raising ineffectiveness of counsel and asserting his innocence. *See* Appellant's Brief, at 25-26. Alternatively, he argues that his plea was not knowing and intelligent because the Commonwealth oscillated between stating at the guilty plea hearing that

Castillo was not the shooter and stating at the sentencing hearing that he was the shooter. **See id.** at 26-27.

The Commonwealth argues that Castillo's self-serving proclamations of innocence did not require the trial court to allow him to withdraw his plea. **See** Appellee's Brief, at 15-17. Also, the Commonwealth argues that Castillo's guilty plea was knowing, voluntary, and intelligent based on the written and oral plea colloquy. **See id.** at 17-18. Additionally, the Commonwealth argues that the prosecutor's statements about who pulled the trigger were not a part of the factual basis of Castillo's plea and regardless, because Castillo admitted his guilt under conspirator liability, whether or not he was the shooter "was not determinative of [his] guilt." **Id.** at 18 (quoting **Commonwealth v. Cole**, 564 A.2d 203, 207 (Pa. Super. 1989) (*en banc*)).

We review the denial of a pre-sentence motion to withdraw a guilty plea for an abuse of discretion. **Commonwealth v. Norton**, 201 A.3d 112, 116 (Pa. 2019). "In determining whether to grant a pre-sentence motion for withdrawal of a guilty plea, the test to be applied by the trial courts is fairness and justice." **Commonwealth v. Torres**, 327 A.3d 640, 648 (Pa. Super. 2024) (citation omitted). "[W]hen a defendant files a presentence motion to withdraw a guilty plea based upon a claim of innocence, the 'innocence claim must be at least plausible to demonstrate, in and of itself, a fair and just reason for presentence withdrawal of a plea.'" **Norton**, 201 A.3d at 120 (quoting **Commonwealth v. Carrasquillo**, 115 A.3d 1284, 1292 (Pa. 2015)).

Based on our review of the record, we discern no abuse of discretion in the trial court denying Castillo's motion to withdraw his plea. Castillo did not assert a plausible innocence claim. *See id.* Further, his claim of ineffective assistance of counsel is premature, as such claims generally should be deferred until collateral review. *See Torres*, 327 A.3d at 648 (recognizing that claims of ineffective assistance of counsel made in support of a bare assertion of innocence "would be better suited for analysis" under the Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546).

Similarly, Castillo's claim that his guilty plea was not knowing and intelligent is also without merit.

> A valid guilty plea must be knowingly, voluntarily and intelligently entered. The Pennsylvania Rules of Criminal Procedure mandate that pleas be taken in open court, and require the court to conduct an on-the-record colloquy to ascertain whether a defendant is aware of his rights and the consequences of his plea. Specifically, the court must affirmatively demonstrate the defendant understands: (1) the nature of the charges to which he is pleading guilty; (2) the factual basis for the plea; (3) his right to trial by jury; (4) the presumption of innocence; (5) the permissible ranges of sentences and fines possible; and (6) that the court is not bound by the terms of the agreement unless the court accepts the agreement.

*Commonwealth v. Kelley*, 136 A.3d 1007, 1013 (Pa. Super. 2016) (internal citations omitted).

The trial court accurately summarized the guilty plea hearing proceedings.

> On the date of his plea, th[e trial c]ourt ensured that [Castillo] understood the nature of the charges to which he was pleading guilty and the factual basis for his plea, by placing both on the

record in open court, translated to [Castillo] through an interpreter. After explaining the process and implications of pleading guilty, [Castillo] requested additional time to speak with his counsel. Th[e trial c]ourt permitted [Castillo] to meet with his counsel and an interpreter privately for approximately two hours, during which [Castillo signed his initials on each page of his Spanish-language written guilty plea colloquy, acknowledging his presumption of innocence and his right to a jury trial. After resuming proceedings, [Castillo] confirmed that he understood the written guilty plea colloquy, wished to plead guilty, and had no further questions for his attorney or for th[e trial c]ourt. Th[e trial c]ourt confirmed that the initials on each page as well as the signature on the final page were [Castillo's] writing. Th[e trial c]ourt explained that the penalty for First Degree Murder, if [Castillo] was found guilty, was life imprisonment without parole, and that the maximum sentence he could receive by pleading guilty to Third Degree Murder was twenty to forty years of imprisonment.

Trial Court Opinion, 12/20/24, at 6.

Additionally, contrary to Castillo's assertion, the record is clear that the factual basis for his plea was not based on the proposition that Castillo was the shooter. In its factual recitation the Commonwealth corrected its earlier misstatement that Castillo had been the shooter. *See* N.T., 5/15/24, at 13. After the Commonwealth made the correction, the following exchange then occurred between the court and Castillo:

THE COURT: All right. Please stand, sir.

Are you pleading guilty because you conspired with other individuals and assisted them when they were shooting the victim? Or he was shooting the victim?

THE DEFENDANT: Excuse me?

THE COURT: Are you pleading guilty because you agreed and you helped someone else shoot the victim?

- 10 -

THE DEFENDANT: Guilty.

*Id.* at 14.

Therefore, Castillo is due no relief for his second issue.

In his third and fourth issues, Castillo challenges the discretionary aspects of sentencing. He argues that, at sentencing the trial court impermissibly considered his prior arrest in Florida for murder, for which he was never convicted, and based on that and failing to consider mitigating factors, the trial court imposed an excessive and unreasonable sentence. *See* Appellant's Brief, at 29-30, 34-38.

To invoke this Court's jurisdiction for a challenge to the discretionary aspects of sentencing, an appellant must satisfy the following four-part test:

> (1) whether the appeal is timely; (2) whether appellant preserved his issue; (3) whether appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code.

*Commonwealth v. Dortch*, 343 A.3d 298, 310 (Pa. Super. 2025) (citation omitted).

Here, Castillo timely appealed, preserved the issue in his post-sentence motion, and included in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence. Additionally, his claim that the trial court considered improper factors at sentencing raises a substantial question. *See Commonwealth v.*

*Downing*, 990 A.2d 788, 792 (Pa. Super. 2010). Therefore, we will consider the merits of his claim.

"Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." *Commonwealth v. Agugliaro*, 342 A.3d 105, 116 (Pa. Super. 2025) (citation omitted). Moreover, it is an error of law for a sentencing court to rely on prior arrests as a sentencing factor. *Commonwealth v. Berry*, 323 A.3d 641, 654 (Pa. 2024).

In imposing its sentence, the sentencing court shall consider "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b). "The record as a whole must reflect due consideration by the court of the statutory considerations." *Commonwealth v. Antidormi*, 84 A.3d 736, 761 (Pa. Super. 2014) (citation and brackets omitted). Additionally, "where the trial court is informed by a PSI report, it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed." *Commonwealth v. Verma*, 334 A.3d 941, 947 (Pa. Super. 2025) (citation and brackets omitted).

At the sentencing hearing, the trial court considered Castillo's individual circumstances and background as stated in the PSI report. *See* N.T., 8/23/24, at 18-22. Notably, the trial court specifically said that it was not considering

Castillo's prior arrest for murder that did not result in a conviction. *See id.* at 39-40. The trial court went on to state that it was considering the fact that Castillo had initially admitted his guilt and accepted responsibility for the crime but was now denying that he committed it. *See* N.T., 8/23/24, at 40-41. The trial court stated that if Castillo would have continued to accept responsibility it would have given him a lower sentence "[b]ut now you no longer get that mitigation." N.T., 8/23/24, at 40. Based on these factors, and the sentencing guidelines, the trial court imposed an aggregate sentence of 20 to 40 years incarceration. *See id.* at 41.

At the post-sentence motion hearing, the trial court recognized that it initially erroneously relied upon the sentencing guidelines for a deadly weapon enhancement, which were a standard range of 90 months to the statutory limit for third degree murder.[1] *See* N.T., 8/2/24, at 37-39. The correct sentencing guidelines had a standard range of 72 months to the statutory limit. The trial court applied the correct guidelines and imposed a sentence within the standard range of 17.5 to 40 years' incarceration for third degree murder with the sentences for the conspiracy and the firearms charge to run concurrently. *See id.*

Based on our review of the record, we find no support in the record for Castillo's claim that the trial court impermissibly considered Castillo's prior

---

[1] The statutory maximum for third degree murder is 40 years. *See* 18 Pa.C.S.A. § 1102(d).

arrest for murder or otherwise abused its discretion in imposing a sentence within the standard range of the sentencing guidelines. Therefore, Castillo's sentencing challenge fails.

As we find none of Castillo's issues merit relief, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/12/2026